BENJAMIN SALDUCCO, Plaintiff, *v.* SIMON ETKIN, as City Clerk of the City of Schenectady, and Others, Defendants.*

Supreme Court, Schenectady County, February 21, 1935.

*Ettore Mancuso*, for the plaintiff.

*William D. Smith, Corporation Counsel*, for the defendants, Simon Etkin and others.

*Walter S. McNab, County Attorney*, for the defendants Charles L. Wick and another, constituting the board of elections of Schenectady county.

*Richmond D. Moot*, for the defendants Philip L. Alger and another.

*Harry G. Coplon*, for the defendant Schenectady Taxpayers' Association.

*Nathaniel B. Spalding*, for the defendant East End Civic Improvement Association, Inc.

BREWSTER, J. At the time and on the occasion of the last general election held in the city of Schenectady a question as to the adoption by that city of a simplified form of government, to wit, plan C, sanctioned by chapter 444 of the Laws of 1914, was submitted and voted upon. At said general election, 32,262 electors voted, of whom 18,274 voted upon said question. Of the latter number 12,230 voted in the affirmative and 6,044 in the negative.

Plaintiff, as a complaining taxpayer, sues to restrain further official action requisite to effectuate the result of said vote and to annul the result thereof. His claim to judgment therefor is based on two grounds: *First*, that the submission of the question at the time and place of the general election was illegal in that it was not permitted by law; *second*, that the required published notice of such submission was fatally defective.

The question submitted and voted upon was duly originated by petition and presented to the proper officials in such due time (September 24, 1934) and manner as to require its submission to the electorate at the time of the next ensuing general election on November 6, 1934, provided that, at such time, there was also to be held a " general city election " as such term is defined by the statute, viz., Laws of 1914, chapter 444, section 18, and section 2, subdivision 2. Here we are given a special definition, viz.: " The term ' general city election ' means an election at which the final selection is made of a city officer." Since, at such general election, the final selection of a supervisor was required to be made to fill a vacancy in such office which had been caused by the death of the supervisor for the eleventh ward of said city, on or about January 10, 1934 (State Const. art. 10, § 5; *People ex rel. Deitz* v. *Hogan*, 165 App. Div. 298; *People ex rel. Howard* v. *Board of Suprs. of Erie County*, 42 id. 510; affd., 160 N. Y. 687), it is plain that a " general city election," within the aforesaid definition, was also held in conjunction with the general election, provided only that a supervisor is a city officer. If a supervisor be not a city officer, then what is he? Such constitutional office must be related to some branch of government. It has been held that individually he is classed as a town officer (*Matter of Noble*, 34 App. Div. 55, 58; *People ex rel. Coon* v. *Wood*, 59 Hun, 616), and the statutes so style him. (Town Law, §§ 20, 60.) When he represents a town, admittedly he is a town officer. When he represents the ward of a city, it is equally clear, to me, that he must be considered a city officer so far as concerns his alignment in municipal relationship. And this, despite the fact that in a city the distribution of the powers of local government has shorn him of many, if not all, of his powers and prerogatives of direct participation. Certain statutes confirm this view. The General City Law, section 2, styles him a city supervisor. The Second Class Cities Law, section 11, places him on the roster of such city officialdom under a general article heading of " Officers." Both of these statutes prescribe the tenure of his office and the time and manner of his election (Gen. City Law, § 2; Second Class Cities Law, §§ 11, 13, 14, 15). This view of the matter seems to render futile plaintiff's attack upon the adoption of the question in so far as it is based on the contention of illegality because of the time and occasion of the submission of the question. There remains, as regards that contention, only his argument that the special statutory definition of a " general city election " excludes selection by an election to fill a vacancy. This would interpret the definition as being descriptive only of the regular general city election holden in odd number years, and thus render superfluous the

definition expressly given for the use and purpose of the very statute where it occurs. The statutory explanation is conspicuous, emphatic and precise. It may not be brushed aside as a superfluity or reduced to the absurdity of useless office. It employs the phrase "final selection" with very evident intent to include an election to fill a vacancy, and seemingly in purposeful contradistinguishment of what might have been generally understood by the word "election."

The published notice of the submission of the question consisted only of its mere statement in the body of the regular general election notice. The latter was captioned, "To the Voters of the County. General Election Notice." Conspicuous is the absence of any words or phraseology to expressly inform that the published question would be submitted at such election or that it would or could be voted upon thereat. The statute required the commissioners of elections, during the four weeks next preceding the election, to publish notice of the submission of the question (Laws of 1914, chap. 444, § 20). Strictly speaking, then, notice of the submission was omitted. Rather equivocal appears the presence there of such stated question. Tending to render it more so is the next following paragraph expressly giving "further notice" that a certain proposition "will be submitted to the voters for approval or disapproval" at such general election.

A general election fixed and called by a statute will not fail because of a defect in or in fact an utter absence of the further notification directed to be given by statute. The latter are considered directory only. But in the case of a special election where the public are not deemed charged by law with notice thereof, because its time and place are not fixed by statute, a different rule prevails. There the statutory regulations and requirements as to giving notice are mandatory and must be strictly followed. But there is authority for the rule that a failure to give the statutory notice of a special election will not invalidate it if the electors were in fact informed of the time, place and purpose, and generally voted thereat upon a question submitted. (20 C. J. 97, § 82.) In the case at hand, the submission of the question must, I believe, be tested by the rules obtaining as regards the requirements as to the notice of a special election. In origin, presentation and subject-matter submitted, it was a special election. No definite notification of time and place is to be found in any statute. Voluntary action by certain citizens in the manner prescribed by the statute was a condition precedent. In reality, the submission of the question was a special election, permitted, however, for the reasons above stated, to be held in conjunction with the general one.

But, tested by such rules, it is my opinion that the defect in the published notice is not fatal. The posted notices were in due compliance with all requirements. The published notice certainly afforded some notice. The presence of the question in the body of the advertised notice of the general election could only be explained in the mind of the reader, it seems, as an indication that it would and could be voted upon on general election day, or else that it was incorporated there fortuitously. And, it seems, the public may be charged with notice of the legal presumption that the public officials who prepared and published the general election notice incorporated the question therein designedly and not through accident or by mistake. The presence of the question on the voting machine ballots gave direct notice to over 32,000 of the city's electors. Over half of them recorded their choice of answer by an affirmation, or better than two to one. On this showing, it is quite inconceivable that the defect in the published notice in fact misled any considerable number of the electors, or that if it had not been present the result would have been any different in effective result. Moreover, it is not shown nor has it been argued that the electors who did not vote upon the question failed to do so or were prevented from so doing because of the defect in the published notice. According to some authorities, and there are none contrary in this State, the burden of showing this is upon the party who seeks to vitiate a public election because of a failure to comply strictly with the statutory requirements as to the giving of notice thereof. (*Fike* v. *State*, 25 Ohio Cir. Ct. 554; *Town of Grove* v. *Haskell*, 24 Okla. 707; 104 P. 56; *State ex rel. Mullen* v. *Doherty*, 16 Wash. 382; 47 P. 958; 58 Am. St. Rep. 39; 20 C. J. 99, § 83.)

Judgment may be entered accordingly. Settle decision on notice.