TOWN OF CORTLANDT, Appellant, *v.* VILLAGE OF PEEKSKILL et al., Respondents.

Argued November 13, 1939; decided November 21, 1939.

492

*Charles Blank* for appellant.

*William A. Davidson, County Attorney,* for County of Westchester, *amicus curiæ.*

*Edward G. Halsey, Jr., Corporation Counsel,* for respondents.

*Isadore Vogel* for Non-Partisan Citizens Committee of Village of Peekskill, *amicus curiæ.*

RIPPEY, J. This action was brought to procure a declaratory judgment decreeing that chapter 194 of the Laws of 1938, being the proposed charter for the city of Peekskill, is inoperative and void or, in the alternative, to declare the meaning of and so construe certain provisions of the act as to make the charter workable. The act was passed upon emergency message by the Governor and became a law on March 29, 1938.

Section 204 of the act provides that it shall become effective on January 1, 1940, provided that " this act shall be adopted and approved as follows: At the general election of the inhabitants of the territory within the proposed city of Peekskill, as in this act described, which shall be held on the twelfth day of April, nineteen hundred thirty-eight, at which [there shall be submitted to the qualified voters the following proposition: Shall the legislative act of nineteen hundred thirty-eight approved by the governor, entitled ' An act to incorporate the city of Peekskill ' be approved? Unless a majority of the votes cast at such election shall be in the affirmative, this act shall thereupon become ineffective. All said inhabitants possessing the qualifications to vote under the present charter of the village of Peekskill shall be entitled to vote at said election."

At the outset it is asserted that the charter did not go into effect because the question was not submitted to the voters in accordance with law and appellant specifies, as grounds for this challenge, that legal notice of the submission of the question was not given and notice of right to vote on the question was limited to taxable inhabitants only.

There is no provision in the act as to what notice shall be given to those entitled to vote on the submission of the act. The date for submission is fixed, i. e., April 12, 1938. It is agreed that April twelfth was the date duly fixed for

the annual election of village officers. Between the date when the act became a law and the date of submission was an intervening period of thirteen days. Counting March 29, 1938, there was fourteen days' time for notice of submission prior to the day when the event occurred from which reckoning was required to be made (General Construction Law [Cons. Laws, ch. 22], § 20; cf. *People* v. *Burgess*, 153 N. Y. 561). In the absence of any provision of the act to the contrary, it must be presumed that the Legislature determined that the period allowed for notice of submission was sufficient.

Section 4 of title II of the charter of the village of Peekskill then in force (Laws of 1883, ch. 117), provided that notice of the annual election for village officers must be published " for two consecutive weeks immediately preceding said election in two or more of the village newspapers." This required the full period of fourteen days to elapse since the first publication of the notice. (*Olds* v. *City of Jamestown*, 280 N. Y. 281.) The village charter contains no provision specifying what notice, if any, must be given of the *submission of a proposition* to be voted upon at the village election. Section 52 of the Village Law (Cons. Laws, ch. 64, as amd. L. 1928, ch. 854; L. 1934, ch. 136) supplies that requirement and is effective here as well as is the requirement contained in that section in regard to posting notices, since those provisions of the Village Law are not inconsistent with the special law by which the village of Peekskill was incorporated (Village Law, § 380), and are not inconsistent with the provisions of the act chartering the city. Section 52 requires the notice of submission of the proposition to be " conspicuously posted in at least six public places in the village " and further provides that " a vote upon a proposition shall be void unless due notice of the election has been given." Due notice of the election, so far as the submission of the proposition in question was concerned, required publication in two or more village newspapers for two consecutive weeks immediately preceding such election as required by section 4 of title II of the charter

of the village of Peekskill and posting thereof as required by the provisions of section 52 of the Village Law. These provisions are mandatory on submission of a proposition. If either step was omitted the vote on the submitted proposition is void. (Cf. 8 State Dept. Rep. 516, and cases cited.)

The notice of the annual election was published in the *Evening Star*, a daily newspaper, on March 25 and April 1, 1938, in the *Press Union*, a daily newspaper, on March 25, March 31 and April 4, 1938, and in the *Highland Democrat*, a weekly newspaper, on March 24, March 31 and April 7, 1938. That publication substantially complied with the requirements of the statute with respect to the notice of the annual election of village officers to be published in newspapers (*Salducco* v. *Etkin*, 268 N. Y. 606), since, by express statutory provision, failure to post notices thereof did not render the election invalid (Village Law, § 52). The Legislature did not extend that saving clause to the submission of a proposition but, on the contrary, expressly required notice to be given as required by law.

The notice of submission of the proposition was not a part of the notice of annual election as required by section 52 of the Village Law. A separate notice was printed whereby the budget for the village was detailed and was submitted to the *taxable inhabitants* of the village and in this notice near the end thereof was printed the proposition with reference to the submission of the charter. That notice reads: " Notice is hereby given, that the following estimates for the objects and purposes herein set forth will be submitted to a vote of the taxable inhabitants of the Village of Peekskill at the annual election to be held Tuesday, April 12, 1938, pursuant to the Charter of said Village, being the estimated expenses for the ensuing year, to-wit:" Then follows a detailed list of estimates for the different village departments and, serially, thirteen resolutions for the raising of the amounts specified in the budget and for other purposes. Following that long and detailed notice and at the end thereof is set out " Proposition No. 1," being the question specified in section 204 of the City Charter Act. That notice was published as follows: In

the *Evening Star* on March 29, April 5 and April 12, 1938, in the *Press Union* on March 29, April 4 and April 11, 1938, and in the *Highland Democrat* on March 31 and April 7, 1938. We think that the publication of that notice so far as publication in the newspapers was concerned possibly might be held to be a substantial compliance with the requirements of the statute (*Salducco* v. *Etkin, supra*). However, this notice was not posted as required by the provisions of section 52 of the Village Law and the proposition was not submitted to all of the inhabitants of the village of Peekskill who were entitled to vote thereon under the Village Charter (See L. 1883, ch. 117, tit. II, § 5), as required by section 204 of the proposed city charter. The vote thereupon was, therefore, voidable (*Village of Lynbrook* v. *Cadoo*, 252 N. Y. 308, 312) at the instance of plaintiff for failure to submit the proposition as required by law.

It is urged by respondents that actual notice of the submission of the proposition was received by all of those entitled to vote at the election regardless of whether they were taxable inhabitants or otherwise by virtue of meetings that were held, discussion of the merits of the proposition and general publicity and that the submission of the proposition should not be set aside because the statutory requirements were not complied with. Attention is also called to the fact that 5,722 votes were cast at the general election, of which number 4,356 voted on the charter proposition, that 3,100 votes were cast in favor of the charter proposition and that the proposition would have carried even though every person entitled to vote who presented himself at a voting booth had voted upon the proposition. The opinion in *Salducco* v. *Etkin* (155 Misc. Rep. 361) is relied upon. In the *Salducco* case, however, the notices were posted as required by law and the question of the limitation of the vote to that of the taxable inhabitants was not involved. The mere fact that no harm was done, if such be a fact, and that no voters were disfranchised by virtue of the irregular notice and the failure to post any notice whatsoever is not material. When the statutes prescribe methods by

which propositions changing the form and structure of government shall be submitted, it cannot be left to the discretion of the court to say that substantially no notice whatever is required or that the specific provisions of the statutes may be overridden. There must be some uniformity in matters of this kind. The question is one of legal notice and not one of actual notice (*Matter of Town of La Fayette*, 105 App. Div. 25, 31; *Matter of Town of Livingston*, 189 N. Y. 549; *Matter of Peters* v. *Sisson*, 224 N. Y. 554).

The boundaries of the city of Peekskill as outlined in said act are asserted to be generally the same as those of the village of Peekskill and the same is a governmental unit within the town of Cortlandt in Westchester county. The charter of the village of Peekskill and acts amendatory thereof were amended, consolidated and revised by chapter 117 of the Laws of 1883. There was no supervisor for the village, as such. Section 5 of the act creating the city provides that the town of Cortlandt shall on and after January 1, 1940, consist of all of that portion of the town not included within the boundaries of the city of Peekskill and that the territory embraced within the latter unit shall constitute no part of the town and section 5-a excludes residents of the city from holding town offices. Section 9 provides for elective officers of the new city consisting of a mayor, six councilmen, *two supervisors*, a comptroller and such other officers as may be provided by law. Various governmental departments are created and positions named to be filled by appointment to enable the city to function. All of the elective officers were to be chosen at the general election to be held in November, 1939, or November, 1941, and were to take office on January 1, 1940, or January 1, 1942, it being asserted that provisions of the act creating the elective personnel of the new government and the times at which its elective officers should be selected and commence to function are inconsistent and indefinite. The act creating the city provides, as above stated, for the election of two supervisors for the city, thereby creating two additional supervisors for the county of Westchester, and

it is urged both by plaintiff and by the county that the new charter is violative of section 26 of article III of the Constitution as it existed in 1938, at least, in so far as it provides for the additional supervisors.  It is additionally urged that the provisions of the new charter are so indefinite, inconsistent and uncertain that it is impossible to determine the meaning of its provisions or to put them into practical operation, and we are urged by all parties to disclose their meaning and to so construe them as will give them practical effect.  In view of our decision that the charter was not submitted to the voters as required by law, we express no opinion upon any of the foregoing questions.  Evidently, the Legislature believed that there was merit in those contentions, for it passed an act at the 1939 session (Laws of 1939, ch. 825), which received the approval of the Governor on June 9, 1939, for the purpose, it is asserted, of correcting the alleged defects in the charter.  We are told that the latter act was submitted to the voters on July 21, 1939, and was defeated.  The government of the village of Peekskill continues to function, as provided by the village charter, in all respects as it functioned at the time of the passage of the act creating the city of Peekskill unless and until the latter or a similar act should be again authorized for submission and submitted and become legally effective.

This action was commenced on October 5, 1939.  This was about one year and six months after the act was submitted to the voters and on the eve of the 1939 general election.  On the record and briefs submitted, it cannot be held that plaintiff was guilty of laches in commencing the action.  The authorities of the town of Cortlandt and of the village of Peekskill were attempting, during a large portion of the time intervening between the submission, on April 12, 1938, of the act creating the city and the date of the commencement of the action, to correct the alleged defects in the charter through legislation without resort to the courts.

The judgments should be reversed and the matter remitted to Special Term to enter judgment declaring that chapter

194 of the Laws of 1938 was not legally submitted to the qualified voters at the election held on April 12, 1938, and that said act, therefore, failed to become effective, with costs in all courts.

CRANE, Ch. J., LEHMAN, HUBBS, LOUGHRAN and FINCH, JJ., concur; O'BRIEN, J., taking no part.

Judgment accordingly.