William E. Lane, Jr., et al., Respondents, *v.* Ellsworth E. Johnson et al., Appellants.

246

Argued June 10, 1940; decided July 23, 1940.

*Robert E. Dempsey* and *E. J. Dimock* for appellants. The legalizing act (L. 1940, ch. 409) cured the defect, if any, in the town of Cortlandt election. (*East* v. *Brooklyn Heights R. R. Co.*, 195 N. Y. 409.) The town of Cortlandt election held on November 7, 1939, was a general election. The general election was not affected by chapter 194 of the Laws of 1938. (*Salducco* v. *Etkin*, 155 Misc. Rep. 361; *People ex rel. Goring* v. *President of Wappingers Falls*, 144 N. Y. 616; *People ex rel. Hirsh* v. *Wood*, 148 N. Y. 142; *People ex rel. Davies* v. *Cowles*, 13 N. Y. 353.) The eligible voters of the village of Peekskill had the right to vote for the candidates for town officers. Their omission to exercise that right did not invalidate the election in the town of Cortlandt of November 7, 1939. (*Scholl* v. *Bell*, 25 Ky. 750; *People ex rel. Goring* v. *President of Wappingers Falls*, 144 N. Y. 616; *People ex rel. Hirsh* v. *Wood*, 148 N. Y. 142.) Former subdivision 4 of section 26 of article 3 of the New York Constitution has no application to

chapter 194 of the Laws of 1938. (*Bank of Chenango* v. *Brown*, 26 N. Y. 467; *City of New York* v. *Village of Lawrence*, 250 N. Y. 429; *Cort* v. *Smith*, 249 App. Div. 1; 273 N. Y. 481; *Salducco* v. *Etkin*, 155 Misc. Rep. 361; 268 N. Y. 606; *People ex rel. Clancy* v. *Board f Supervisors*, 139 N. Y., 524.)

*E. J. Dimock* for Village of Peekskill, *amicus curiæ*. Valid retroactive legislation has cured the defects in the submission of the Peekskill City Charter. (*Wrought Iron Bridge Co.* v. *Town of Attica*, 119 N. Y. 204; *Cromwell* v. *MacLean*, 123 N. Y. 474; *Meigs* v. *Roberts*, 162 N. Y. 371; *People ex rel. Dady* v. *Prendergast*, 144 App. Div. 308; 203 N. Y. 1; *Dunkum* v. *Maceck Bldg. Corp.*, 256 N. Y. 275; *Robia Holding Corp.* v. *Walker*, 257 N. Y. 431; *City of New York* v. *Village of Lawrence*, 250 N. Y. 429; *People ex rel. Dare* v. *Howell*, 174 App. Div. 118; 220 N. Y. 593.) Neither the Peekskill City Charter nor the curative act is invalid as changing the form or composition of the elective body of the county of Westchester within the meaning of subdivision 4 of section 26 of article 3 of the old Constitution, subdivision (d) of section 2 of article 9 of the new Constitution. (*People ex rel. Clancy* v. *Board of Supervisors*, 139 N. Y. 524.) The method of adoption of the charter was not invalid as a delegation of legislative power to the electors. (*People ex rel. Unger* v. *Kennedy*, 207 N. Y. 533.)

*Clifford Couch* for respondents. Chapter 194 of the Laws of 1938 having been declared invalid, the election of town officers in the town of Cortlandt on November 7, 1939, was invalid, and, therefore, constitutional rights of suffrage were denied to the electors within the village of Peekskill in voting for town officers. (*Matter of Hopper* v. *Britt*, 203 N. Y. 144; *Matter of Lauer* v. *Board of Elections*, 262 N. Y. 416; *People ex rel. Nichols* v. *Board of Canvassers*, 129 N. Y. 395; *People ex rel. Woods* v. *Crissey*, 91 N. Y. 616.) There was no election of town officers on November 7, 1939. (*People ex rel. Deitz* v. *Hogan*, 214 N. Y. 216;

*Matter of Mitchell* v. *Boyle,* 219 N. Y. 242.) Chapter 409 of the Laws of 1940 is invalid and void under section 26 of article 3 of the former State Constitution in that it is an attempt to cure or remedy a jurisdictional defect in and with regard to chapter 194 of the Laws of 1938. (*Town of Cortlandt* v. *Village of Peekskill,* 281 N. Y. 490; *Olds* v. *City of Jamestown,* 280 N. Y. 281; *Meigs* v. *Roberts,* 162 N. Y. 371.) Chapter 409 of the Laws of 1940 cannot validate the election of officers for the city of Peekskill held on November 7, 1939. (*Town of Cortlandt* v. *Village of Peekskill,* 281 N. Y. 490; *Berkerly* v. *Board of Education,* 58 S. W. Rep. 506; *Cromwell* v. *MacLean,* 123 N. Y. 474; *Olds* v. *City of Jamestown,* 280 N. Y. 281; *Santa Cruz Water Co.* v. *Kron,* 74 Cal. 223; *Harrison* v. *Colgon,* 148 Cal. 69.)

*William A. Davidson* for County of Westchester, *amicus curiæ.* The so-called validating or curative act was an attempted cure of a single deficiency, notwithstanding the other constitutional defects. (*Town of Cortlandt* v. *Village of Peekskill,* 281 N. Y. 490; *Olds* v. *City of Jamestown,* 280 N. Y. 281; *Wingate* v. *Flynn,* 139 Misc. Rep. 779; 233 App. Div. 785; 256 N. Y. 690; *Norton* v. *Shelby County,* 118 U. S. 425; *People ex rel. McDougal* v. *Johnston,* 6 Cal. 673.) The method of the adoption of the charter, as provided by section 204 thereof, was an invalid delegation of legislative power. (*Barto* v. *Himrod,* 8 N. Y. 483; *People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533.)

LEHMAN, Ch. J. At the general election held on November 2, 1937, the plaintiff William E. Lane, Jr., was elected Supervisor and the plaintiff S. Allen Mead was elected Town Clerk of the town of Cortlandt. Their terms of office expired on December 31, 1939. At the general election held on November 7, 1939, at which their successors were to be elected, they were not candidates for re-election; but they claim that at that election no other persons were validly elected to the offices they had held and that they may " continue to discharge the duties of their respective offices after the expiration of the terms for which they have

been chosen until their respective successors be chosen and qualified."

In 1937, when the plaintiffs were elected to offices in the town of Cortlandt, the village of Peekskill, in which they resided, was a part of the town. The village was still a part of the town at the time of the general election held on November 7, 1939; but chapter 194 of the Laws of 1938, entitled " An Act to provide a charter for the city of Peekskill," purported to provide a charter for the proposed city which was to become effective on January 1, 1940, if a proposition that the statute should be " approved " should be adopted by a majority of the votes cast at the village election of the village of Peekskill to be held on April 12, 1938. A majority of the votes were, in fact, cast at that election for approval. The boundaries of the village of Peekskill were the same as the boundaries of the proposed city of Peekskill.

In the statute then approved there is a provision that from and after January 1, 1940, " the town of Cortlandt shall " consist of all that " portion of said town not included within the boundaries of the city of Peekskill and the territory embraced within the boundaries of the city of Peekskill as hereinbefore described shall not constitute or be a part of the town of Cortlandt " (art. II, § 5), and also a provision that the portion of the " present town of Cortlandt which  *  *  *  lies without · the limits of the present village of Peekskill, and which, after this act goes into effect, is to constitute the whole of the said town of Cortlandt, shall at the election of town officers to be held in nineteen hundred thirty-nine elect town officers to take the place of the said town officers whose terms expire on the thirty-first day of December, nineteen hundred thirty-nine; and no person shall then be nominated or elected to any of said offices who shall at the time of such election be a resident of the village of Peekskill." (Art. II, § 5-a.) In another section the statute contained analogous provisions for the election in 1939, by residents of the village of Peekskill, of city officers of the city of Peekskill, including two Supervisors. If chapter 194 of the Laws of 1938 was a

valid exercise of legislative power and the election of April, 1938, at which the voters approved the statute was properly held, then at the general election held in November, 1939, the inhabitants of the territory within the proposed city, including these plaintiffs, were entitled to vote for and elect city officers who would take office on January 1, 1940, but were not entitled to vote for officers of the town of Cortlandt who would take office on the same day.

Accordingly, within the territory of the proposed city, party nominations were made for city offices, as provided in the statute, and on each voting machine, used in the election district within that territory, the name of the candidates so nominated appeared and no vote could be cast upon these voting machines for any other office. Similarly, in the town of Cortlandt, outside the limits of the proposed city, the names of candidates for town offices appeared. The votes were then canvassed and the candidates for city and for town offices, who had received the largest number of votes were declared elected.

Before this election, the town of Cortlandt had brought an action to procure a declaratory judgment decreeing that, even though the " Act to provide a charter for the city of Peekskill " (Laws of 1938, ch. 194) was approved by the voters at the village election in April, 1938, the statute was inoperative and void. The complaint was dismissed at Special Term and the Appellate Division in October, 1939, had affirmed the judgment. On November 21, 1939, immediately after the election of city officers, this court reversed the judgment and the matter was " remitted to Special Term to enter judgment declaring that chapter 194 of the Laws of 1938 was not legally submitted to the qualified voters at the election held on April 12, 1938, and that said act, therefore, failed to become effective." (*Town of Cortlandt* v. *Village of Peekskill*, 281 N. Y. 490, opinion by RIPPEY, J.) The court felt constrained to reach that result because the notice of the election held on April 12, 1938, had not been given to the qualified voters in accordance with statutory requirements. The court rejected the contention that the defect might be

disregarded because the qualified voters had actual knowledge of the election acquired in other manner and said in its opinion, " The mere fact that no harm was done, if such be a fact, and that no voters were disfranchised by virtue of the irregular notice and the failure to post any notice whatsoever is not material. When the statutes prescribe methods by which propositions changing the form and structure of government shall be submitted, it cannot be left to the discretion of the court to say that substantially no notice whatever is required or that the specific provisions of the statutes may be overridden."

The effect of the decision was to leave the territorial limits of the town of Cortlandt and the political status of the town and its residents as if the statute had never been enacted. The statute, as we said, " failed to become effective." None the less, the inhabitants of the territory and the public officers there, charged with duties in connection with the election of November, 1939, were not at fault in assuming previously that the statute would effectively change the political status after the 1st of January, 1940. The courts below had so instructed them. The result was that the officers of the entire town were elected by the inhabitants of only part of the town. The voters in the territory within the village of Peekskill, and they outnumbered the voters in the remainder of the town, cast their vote for candidates for offices which, under the decision of this court, had not been created. On that ground, the Appellate Division, upon the submission of an agreed statement of facts, has, in the case we now review, sustained the challenge by the plaintiffs and has set aside the election.

Almost 5,000 voters in the territory outside the limits of the village voted for town officers. The effect of the judgment is to render entirely futile the expression of their choice of officers for the political subdivision of the State in which they live and to deprive them of the right to elect the local officers, which is assured to them by the Constitution and the statutes of the State. The law required

that an election be held at that time to choose town officers for the term beginning January 1, 1940. The election officials performed their statutory duties in the election districts outside of the village of Peekskill. The votes in those districts were cast in accordance with all legal requirements and the courts must hesitate to refuse to give effect to the properly expressed choice of the voters because in other districts, through error of officials there, the voters were not afforded fair opportunity to exercise their franchise. (Cf. *People ex rel. Goring* v. *President of Village of Wappingers Falls*, 144 N. Y. 616.) On the other hand, the error of these officials, though under the circumstances entirely excusable, did result in a substantial denial to the voters in the village of Peekskill of any right to vote for their town officers. (Cf. *People ex rel. Deitz* v. *Hogan*, 214 N. Y. 216.) Argument that, in some manner, a voter there should have known that the statute incorporating the city of Peekskill was " inoperative," and that a voter, knowing that, might, in some manner, have vindicated his right to vote for town officers, ignores every practical consideration. The Appellate Division was fully justified in holding that, for all practical purposes, there was no election for town officers held in that part of the town of Cortlandt which lies within the boundaries of the village of Peekskill and that the inhabitants of the village had no opportunity to vote for town officers or to be candidates. The serious question which that court was required to decide is whether, on that account, effect should be refused to the votes cast by the voters in the remainder of the town.

While the appeal from that decision was pending, a statute was enacted intended, as stated in its title, " to legalize the submission of a proposition for the approval of chapter one hundred ninety-four of the laws of nineteen hundred thirty-eight * * * at an election of the qualified voters of the territory within the proposed city of Peekskill * * *." (Laws of 1940, ch. 409.) If the Legislature had power to enact that statute, then by its terms the

statute cured the defects in the notice of the election of April, 1938, at which the proposition whether the " Act to incorporate the city of Peekskill " should be approved was submitted to the qualified voters. Then, the statute incorporating the city, which until that time was " inoperative " under the decision of this court rendered in November, 1939, would be given effect according to its terms as if the voters had given approval at a valid election. The separation of the city of Peekskill from the town of Cortlandt would be complete. The town officers chosen by a majority of the voters in the territory outside of the city would have jurisdiction only in that territory and the reasons which induced the Appellate Division to decide that the election of these officers in November, 1939, was invalid, would then lose all force. We need not determine whether the decision of the Appellate Division was sound under the law as it then was if we find that the Legislature had power to enact the curative statute and to give retroactive effect, in some matters, to a statute previously declared " inoperative." (Cf. *People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173, 180, and cases there cited.) That is the primary problem presented upon this appeal.

It is said that the failure to give the statutory notice of the election of 1938, which, the court pointed out, was mandatory and for want of which the election was without effect, constitutes a " jurisdictional defect, which cannot be overlooked or remedied by curative statute." (*Olds* v. *City of Jamestown*, 280 N. Y. 281, 285; *Meigs* v. *Roberts*, 162 N. Y. 371.) The Legislature has no power to authorize legal proceedings to divest rights without due process of law, and there can be no due process without proper notice of the proceedings. Where proceedings are had without proper notice in disregard of the requirements of due process of law, the Legislature has, it is plain, no more power to give sanction and force to what has been done without proper notice than it would have had to authorize in advance such legal proceedings without notice and compliance with the requirements of due process. A notice insufficient to

meet the requirements of due process and to confer jurisdiction upon a legal proceeding, can never be made sufficient retroactively in proceedings already complete. Where property has been taken without due process the defect cannot be cured by any fiat of the Legislature. In such cases defect in notice is a " jurisdictional defect."

In this case, as we have said, the Legislature chose to decree that the " Act to provide a charter for the city of Peekskill " (Laws of 1938, ch. 194) should become effective only provided that it was approved by the electors at an election for which notice in advance should be given in manner directed by the Legislature. It may be sound legislative policy to leave to the inhabitants of a proposed city the final decision whether they will accept or reject a charter which the Legislature offers to them, but no provision of the Constitution requires the Legislature to annex such a condition to its statute and no consideration of public policy dictates a particular form of notice of the election, if the Legislature decides that such a condition should be annexed. More than 4,000 qualified electors in the village of Peekskill cast votes at the village election and a substantial majority of the votes were cast in favor of the proposition that the proposed city charter for the village should be approved. Because the Legislature alone has power to determine the conditions upon which a statute should become effective, this court can give no effect to an expression of the will of the qualified voters where notice of the election has not been given to the voters in the manner directed by the Legislature, even though, as we pointed out, actual notice may have been received by all those entitled to vote at the election and it may be the fact " that no voters were disfranchised by virtue of the irregular notice " (p. 496). The Legislature, however, is not impotent in such case. Since the Legislature had plenary power to determine whether it would or would not submit its statute to the voters for approval and plenary power, if it did decide to direct such submission, to determine what notice should be given to the electors, irregularity in giving such notice

is clearly not a " jurisdictional " defect and the Legislature is under no disability which would restrict its power to decree thereafter, as it has done here, that in spite of irrgularity in the election it will incorporate the city of Peekskill as provided in the original statute of incorporation, and thus give effect to the " clear expression of the will of the qualified voters " shown by a substantial majority of the votes cast at the election which had been given " wide publicity." (Cf. *People ex rel. Dare* v. *Howell*, 174 App. Div. 118; affd., 220 N. Y. 593, without opinion, and perhaps not on all the grounds stated in the opinion of the Appellate Division; *People ex rel. Village of Brockport* v. *Sutphin*, 166 N. Y. 163.)

Argument is made that even if the Legislature had power, by statute in 1940, to declare effective chapter 194 of the Laws of 1938 which, without such new statute, was and would have remained inoperative — yet it could not by its fiat declare that a statute which was inoperative until that time, shall be treated as if it had been operative earlier and thus give effect retroactively to an election previously conducted which would otherwise be void. If the Legislature may do that then, it is said, the source of the right to office of persons chosen at the election, which is inoperative and void without the subsequent " curative " statute, would be the legislative will and act, not the suffrage of the voter. The legislative act would then, it is said, be, in effect, an appointment to office prohibited by article 9, section 7 (formerly article 10, section 2), of the Constitution of the State of New York.

That section can have no application to the facts in this case. The defendants were elected officers of the town of Cortlandt at a general election in November, 1939, by the qualified electors residing within the boundaries of the town as fixed by chapter 409 of the Laws of 1940. Though at the time that the election was held the village of Peekskill was still a part of the town of Cortlandt, the inhabitants of the village of Peekskill did not vote for officers of the town of Cortlandt but for officers of the city of Peekskill, which

it was assumed would not be part of the town of Cortlandt after January 1, 1940. Our decision in *Town of Cortlandt* v. *Village of Peekskill* (*supra*) authoritatively determined that the assumption was erroneous, at the time of the election; but chapter 409 of the Laws of 1940 became a law April 12, 1940, and from that date the town of Cortlandt no longer included the territory within the boundaries of the city of Peekskill; and the election held for town officers within the town boundaries was no longer subject to challenge on the ground that the proposed city was part of the town and that the election for town officers should have been conducted in the whole town. The Legislature did not choose the local officers of the town or city when by "curative" statute they incorporated the city and changed the boundaries of the town. They merely destroyed from April 12, 1940, the only ground upon which the right to offices of the candidates chosen by the electors of the territory within the town and city could be challenged. After that date no reason existed why the will of the electors in city and town expressed at an election held for that purpose should be thwarted. That is not an "attempt to substitute an election by the Legislature for one by the qualified town electors." (*People ex rel. Dare* v. *Howell*, *supra*, p. 122.)

We have so far discussed only the power of the Legislature to pass a "curative" statute giving effect to chapter 194 of the Laws of 1938, in spite of the defects and irregularities in the election, which this court held had prevented the statute from becoming operative. The validity of the original statute had been challenged in this court, also, on many other grounds which, we said, it was not necessary for us to consider at that time. The same challenge is now directed against the statute and we must now pass upon that challenge.

It was urged in the case of *Town of Cortlandt* v. *Village of Peekskill* (*supra*), and is again urged now, that "the provisions of the new charter for the proposed city, are so indefinite, inconsistent and uncertain that it is impossible

to determine the meaning of its provisions or to put them into practical operation " (p. 498). Unskillful draftsmanship is no ground for declaring a statute void. The Legislature determines both the form and content of the charter and the courts are not intrusted with authority to criticize the work of the Legislature or to refuse to give effect to a statute which by reasonable construction may be made to function in practical manner. We do not analyze in detail the specification of alleged defects by the defendants. The alleged inconsistencies may be reconciled or are unimportant and alleged indefiniteness may be removed by construction of provisions which might, perhaps, have been expressed more precisely, and our attention has not been called to any alleged defect which would render it impossible for the municipal government established by the charter to function. Defects which may impede the efficient operation of the government may be cured hereafter by legislative action. Objection that chapter 194 of the Laws of 1938 disregards provisions of the Constitution restricting the power of the Legislature require more extended consideration.

The most serious objection is that the statute violates article III, section 26, subdivision 4, of the Constitution of the State in effect in 1938 when the statute was enacted, or, at least, that under that subdivision the statute would not become effective until approved upon submission to the voters of the county. Subdivision 1 of that section provided that " There shall be in each county   *   *   *   a board of supervisors, or other elective body, to be composed of such members and elected in such manner and for such period as is or may be provided by law." Subdivision 2 of the same section provides, among other things, that " The legislature shall provide by law for the organization and government of counties and shall provide by law alternative forms of government for counties   *   *   *   and for the submission of one or more such forms of government to the electors residing in such counties." The county of Westchester adopted a form of government submitted in accordance with the provisions of subdivision 2 of that

section. Subdivision 4 of that section was intended to restrict change, by special or local law of the form of government of a county after it had adopted a form of government submitted to the voters in accordance with the earlier subdivisions of that section.

Subdivision 4 provided: " After the adoption of a form of government by a county pursuant to subdivision two of this section, the legislature shall not pass any law relating to the property, affairs or government of such county, which shall be special or local either in its terms or in its effect, but shall act in relation to the property, affairs or government of any such county only by general laws which shall in terms and in effect apply alike to all such counties except on message from the governor declaring that an emergency exists and the concurrent action of two-thirds of the members of each house of the legislature and no law, special or local in its terms or in its effect, which abolishes or creates an elective office or changes the voting or veto power of or the method of removing an elective officer, changes the term of office or reduces the salary of an elective officer during his term of office, abolishes, transfers or curtails any power of an elective officer, changes the form or composition of the elective body of such county, or provides a new form of government for such county, shall become effective without adoption by the electors of such county in the manner prescribed in subdivision two of this section for the adoption of a form of government for such county pursuant thereto. Nothing herein contained shall impair or restrict the power of the legislature to enact laws relating to matters other than the property, affairs or government of such county."

The proposed charter for the city of Peekskill provides: " Article IV. * * * § 8. City officers. City officers, under this act, shall include all persons elected or appointed to any office of the city created or authorized by this act or otherwise by law.

" § 9. Elective officers. There shall be a mayor, six (6) councilmen, two (2) supervisors, and comptroller elected

by the electors of the city at large, and such other officers as may be provided by law."

The two Supervisors, though city officers, become, when elected, members of the Board of Supervisors of the county; for the County Law (Cons. Laws, ch. 11), article III, section 10, provides that " The supervisors of the cities and towns in each county, when lawfully convened, shall be the board of supervisors of the county." The plaintiffs now argue that since chapter 194 of the Laws of 1938 is a special or local law and creates offices of two Supervisors of the city of Peekskill, it both creates new elective offices and changes " the form or composition of the elective body " of Westchester county in manner not authorized by former article III, section 26, subdivision 4, of the Constitution.

Article XII of the Constitution (before it was amended in manner formulated by the Constitutional Convention of 1938) dealt with the organization, powers and immunities of cities. Section 1 of that article provided, among other things, that it shall be the duty of the Legislature to provide for the organization of cities and incorporated villages. In proper case and upon compliance with conditions specified in the Constitution, the Legislature might still provide by special or local law a charter for a city seeking incorporation. Article III, section 26, on the other hand, applied only to the form of government of counties. Restrictions contained in that section upon the legislative power to provide a form of government of counties or to change that form after a county had adopted a form of government submitted to it by the Legislature was not intended to hamper exercise by the Legislature of its power to provide for the organization of cities. Indeed, subdivision 7 of section 26 of article III expressly provides that " *nothing contained in this section shall be construed to impair the provisions of article twelve of this constitution.*"

The Supervisors of the city of Peekskill will be city officers. They are so described in the proposed charter and " supervisors " are included in the enumeration of " city officers " contained in article XII, section 6 of the Constitution.

Reference in article III, section 26, subdivision 4, to a statute which creates an " elective office " refers, it is plain, to an elective office in a county, not an elective office in a city. It is true, as we have said, that a Supervisor becomes a member of the Board of Supervisors of the county, but, as this court long ago pointed out, " members of the board of supervisors are never elected *as such*, but hold that office and perform its duties under a general law, and by force of their election as supervisors of separate towns or cities." (*People ex rel. Clancy* v. *Supervisors*, 139 N. Y. 524, 527.) A city charter might contain no provision for a city Supervisor but then the city would have no representation on the Board of Supervisors of the county and this court said in the *Clancy* case that " a charter which left that out and excluded the city from having a supervisor at all would be a maimed and imperfect exercise of the power of city organization."

In view of what was said in that case and giving effect to the provision of the Constitution that the restrictions upon the power of the Legislature to create or change the form of county governments shall not " impair the provisions of article twelve of this constitution," it seems clear that the provisions of article III, section 26, subdivision 4, were not intended to give to the voters of each county power to veto an exercise by the Legislature of its powers to incorporate by special or local law a new city or to restrict the Legislature to a " maimed and imperfect exercise of the power of city organization."

The general law which provides that " the supervisors of the cities and towns in each county, when lawfully convened, shall be the board of supervisors of the county" (County Law, § 10), fixes the form and composition of the Board. The Legislature may not without a referendum change by special or local law the form of county government or the form or composition of its elective body after the county has adopted a form of government submitted by the Legislature in accordance with the mandate of the Constitution. It has not by the special or local law, here challenged, changed in any manner any provision of law which fixes the form of county

government of Westchester or the form or composition of any elective body. It has merely exercised its power to incorporate a city and by force of the provisions of the general law which determines the form or composition of the Board of Supervisors, city officers become members of the Board of Supervisors and thus the number of members of the Board of Supervisors is increased. A construction of the Constitution which would give to the voters of the county a veto upon the incorporation of a new city because under the terms of a general law defining the " form and composition " of the Board of Supervisors, the Supervisor or Supervisors of the new city would become members of the county board, would extend too far the scope of the constitutional restriction and disregard the limitation upon its scope contained in the same section.

Other objections have been raised to the validity of the statute as a whole. We have rejected them after careful consideration. Analysis of each of such objections would unreasonably extend this opinion.

The judgment should be reversed, without costs, and judgment granted dismissing the complaint.

LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur; LEWIS, J., taking no part.

Judgment reversed, etc.