In the Matter of the Application of HERMAN M. ALBERT, Petitioner, for an Order against PAUL J. KERN and Others, as Commissioners of and Constituting the Municipal Civil Service Commission of the City of New York, and Others, Respondents.*

Supreme Court, Special Term, New York County, December 8, 1941.

* Revd., 263 App. Div. 48; App. Div. revd. and Special Term affd., 287 N. Y. ——.

Fred S. Weitzner [*Sidney Sugarman* of counsel], for the petitioner.

William C. Chanler, Corporation Counsel [*William S. Gaud, Seymour B. Quel, Stanley Buchsbaum, William S. Lebwohl* and *Oscar L. Tucker* of counsel], for the respondents.

PECORA, J. The petitioner Herman M. Albert was the successful candidate for the office of register of Bronx county at the last general election held in the city of New York on November 4, 1941.

At the same election there was submitted to the electorate of the city the following Proposition No. 1: " Shall the proposed amendment to the New York City Charter to reorganize county government by abolishing the county offices of Sheriff, Register, Register of Deeds and Registrar, creating the offices of City Sheriff and City Register, to be filled by appointment after competitive Civil Service examination, and assigning the functions of the offices thereby abolished to the City Sheriff, the City Register and the City Department of Correction, be approved?"

There were 507,350 " Yes " votes and 220,092 " No " votes cast upon the proposition. Hence it was adopted by a plurality of 287,258 votes.

The petitioner has instituted this proceeding, pursuant to the provisions of article 78 of the Civil Practice Act, for the general purpose of invalidating the adoption of the proposition and to have himself declared to have been duly elected and entitled to serve as register of Bronx county for the term commencing January 1, 1942, and terminating December 31, 1945. He also seeks other relief which is simply incidental.

The voiding of the adoption of Proposition No. 1 by the voters of the city is sought by petitioner on three main grounds, as follows: (1) That the procedure which was followed in submitting the proposition to the voters — concededly that prescribed by section 44 and section 45 of the charter of the city of New York — was improper and illegal because that procedure has been superseded by section 19-a of the City Home Rule Law, as amended by chapter 867 of the Laws of 1939, which became effective on June 14, 1939. (2) That even if the procedure under section 44 and section 45 of the charter were applicable, there was a fatal failure to comply with the requirements of section 45. (3) That the form of the proposition, as submitted to the voters, violated section 15 of article 3

of the Constitution of the State of New York in that it " embrace[d] more than one subject."

These contentions will now be given attention in that order.

The petition initiating Proposition No. 1 contained 92,551 signatures. Section 44 of the charter, in dealing with methods of amending the charter, provides for an initiating petition to be signed by " not less than *fifty thousand* qualified electors of the city." (Italics supplied.)

But section 19-a of the City Home Rule Law (Laws of 1937, chap. 479, as amd. by Laws of 1939, chap. 867) provides that a local law amending a city charter may be adopted in the following manner: " Qualified electors of a city in a number equal to at least ten per centum of the total number of votes cast for Governor at the last gubernatorial election in such city, may file * * * a petition for the submission to the electors of the city of such a proposed local law * * *." It further provides that such petition be submitted to the local legislative body. If such body fails to act thereon an additional petition signed by " qualified electors who did not sign the original petition equal in number to five per centum of the total number of votes cast for Governor at the last gubernatorial election in such city may require the submission of the local law at the next general election * * *."

Since at the last gubernatorial election, held in this State on November 8, 1938, the total vote cast in the city of New York was 2,314,328, the initiating petition, if section 19-a of the City Home Rule Law were applicable, would require 231,432 signatures. Obviously, the 92,551 signatures would be insufficient.

The charter of the city of New York took effect on January 1, 1938, after it had been approved by the people at a general election held in November, 1936. It is urged by petitioner that section 19-a of the City Home Rule Law provides the only or exclusive method for amending the charter by petition and that its provisions supersede the requirements of section 44 of the charter.

It is clear that the enactment and amendment of section 19-a did not expressly repeal section 44 of the charter. However, section 36 of the City Home Rule Law, as amended by chapter 867 of the Laws of 1939, provides: " All existing charters, local laws and other laws, *so far as not inconsistent with this chapter,* shall continue in force until lawfully repealed, amended, modified or superseded." (Italics supplied.)

Section 30 of the same law provides: " It is not the intention of the Legislature hereby to abolish or curtail any powers or rights heretofore conferred upon or delegated to a city or cities or to any board, body or officer thereof, unless a *contrary intention is clearly*

*manifest from the express provisions of this chapter or by necessary intendment therefrom;* \* \* \*." (Italics supplied.)

Moreover, section 33 of that law provides that " It is not intended by this chapter to repeal by implication any existing provision of law and no law shall be deemed repealed thereby unless expressly provided for herein."

I hold that it was not the intention of the Legislature to repeal section 44 of the charter when section 19-a of the City Home Rule Law was enacted and amended. The two statutes can be harmonized. One applies solely to this city, where the initiating petition would be practically impossible of procurement were section 19-a applicable because of the very large vote usually cast here in a gubernatorial election. As for other cities in the State, the requirements of section 19-a would in all instances be less than the 50,000-signature provision of section 44 of the charter.

The general rules of statutory construction support the conclusion that there was no repeal of section 44 of the charter by section 19-a of the City Home Rule Law. Repeals by implication should not be favored unless the statutes involved are in such conflict that both cannot be given effect. As has already been demonstrated, the statutes here at issue can be harmonized because they apply to different types of cities. Furthermore, it has been frequently held that a special statute is not repealed by a general statute unless there is a clear intention to effect that result. Section 44 of the charter is a special statute applicable solely to the city of New York, while section 19-a of the City Home Rule Law is a general statute which applies generally to cities throughout the State.

The terms of the general statute would control only in a city which lacked a charter provision or other special law covering the subject.

The contention of the petitioner that Proposition No. 1 should have been submitted in accordance with the provisions of section 19-a of the City Home Rule Law, instead of those of section 44 and section 45 of the charter, cannot be upheld. There was no express repeal of those charter provisions by section 19-a, nor do I find any intent on the part of the Legislature to repeal them by implication or by necessary intendment.

In addition to the principles already discussed there is another ground upon which the determination arrived at may be based. Section 31 of the City Home Rule Law provides as follows: " This chapter shall be construed liberally. The powers herein granted *shall be in addition* to all other powers granted to cities by other provisions of law. A *permissive* procedure authorized by this chapter *shall not be deemed to be exclusive or to prohibit the use of*

*any other procedure authorized by any act of the Legislature, city charter or local law* lawfully adopted but shall be deemed an alternative thereto." (Italics supplied.)

Admittedly section 44 and section 45 of the charter were in effect when section 19-a and other sections of the City Home Rule Law were amended by chapter 867 of the Laws of 1939. Following, therefore, the rule of construction specifically laid down in section 31 of the City Home Rule Law, it is clear that the amended section 19-a of that law merely prescribed an additional, permissive and alternative procedure to that already provided for in the charter.

Having sustained the applicability of the procedure to amend the charter as contained in sections 44 and 45 thereof, I pass to the second contention of the petitioner that there was a fatal failure to comply with their provisions. The pertinent portion of section 45 reads as follows: " A proposition for the submission of a local law or an amendment to this charter for the approval of the electors pursuant to this charter shall contain the title of such local law or a brief statement of the subject of such amendment. The city clerk with the advice of the corporation counsel shall prepare an abstract of such local law or amendment concisely stating the title or subject and the purpose and effect thereof, and forthwith shall transmit such proposition and such abstract to the election officers charged with the duty of publishing the notice of and furnishing the supplies of such election. *A sufficient number of copies of such abstract shall be printed, delivered with the other election supplies and distributed to the electors at the time of the registration of voters and at the election."* (Italics supplied.)

The parties to this proceeding have stipulated the material facts upon this branch of the case to be as follows: Before the week of registration (October 6–11, 1941) the board of elections of the city of New York caused to be printed 1,636,400 copies of the abstract of Proposition No. 1. Although the contract under which the abstracts were furnished provided for further copies if wanted, the board of elections neither requested nor obtained any additional abstracts. On the opening day of registration week 400 copies of said abstract were delivered to each polling place of every election district in the city, with instructions to notify the commanding officer of the police precinct in the event that the local election board ran short of any supplies. Thus 400 copies of the abstract were readily available at each polling place, and in no case did any local board request additional copies of the abstract during registration week. The remaining 12,800 copies were divided among the main office of the board of elections and its five borough offices, and kept on hand from the beginning of registration week until after election day. Throughout that period, any persons requesting

copies of said abstract from said offices received same. No additional copies of the abstract were printed subsequent to the beginning of registration week, and no copies of the abstract were delivered to the local boards of election on election day. However, on election day two placards showing facsimiles of the face of the voting machine were delivered to each local board at its polling place. Each placard set forth Proposition No. 1 as it appeared on the voting machine used at the election.

Petitioner contends that an insufficient number of copies of the abstract were printed. The determination of what would be a sufficient number was one which rested in an administrative body, namely, the board of elections. In printing 1,636,400 copies of the abstract, the board presumably acted in the light of its past experience in similar matters. It cannot be said by this court that its decision was arbitrary or capricious, particularly as there is no evidence that any voter desiring a copy did not, or could not, obtain it. Manifestly section 45 did not require the board to print enough copies of the abstract to give one to each voter. " Sufficient " is a relative term, and any determination of its meaning must take into account all the circumstances. In this case, " sufficient " would mean an adequate number to allow each voter who wanted one to obtain it. The proof does not establish any such inadequacy, and I, therefore, hold that a sufficient number were prepared and distributed.

Referring to the further contention of petitioner that there was no compliance with section 45 of the charter *on election day,* it is urged by the corporation counsel that although there was not " strict and literal " compliance, there was a substantial compliance with the section. The relevant provisions of section 45 are patently part of a single plan to inform and enlighten the voters as to the nature of the proposition upon which they are called to vote. Essentially the provisions require notice during registration week and on election day. Here there was literal compliance during registration week. But although abstracts were not delivered to the election boards on election day, informative notice was given to the voters that they were to vote on the proposition, in the form of the facsimiles heretofore mentioned, and by the presence of the propositions textually on the voting machines. Copies of the abstract were available at the main and borough offices of the board of elections. Although the mere posting of the placards might not constitute substantial compliance with the requirements of section 45, that section was substantially complied with by effectuating its purpose. The provision for distribution of abstracts upon two occasions was complied with here substantially, by distribution of a sufficient number during regis-

tration week, by notices calling the attention of the voters to the proposition in the form of placards placed in each polling place on election day, by having the proposition on the voting machines, and finally by having copies of the abstracts available at the main and borough offices of the board of elections. Petitioner fails to show that any voter who wanted an abstract on election day did not get one, or that any voter was not adequately informed of the nature of the proposition on election day.

In *People ex rel. Hirsh* v. *Wood* (148 N. Y. 142, 147) the court said: " The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult."

These principles must be considered here in ruling upon questions, the solution of which may result in disregarding the outcome of a popular referendum. The approval of Proposition No. 1 effectuated a measure of county reform which had been debated and agitated for many years by the city's electorate. I believe that the principle of *Salducco* v. *Etkin* (155 Misc. 361; revd., 244 App. Div. 681; revd., 268 N. Y. 606) governs the determination here. It was there held that the notice involved was a substantial compliance with the statute. The court said (p. 364): " But there is authority for the rule that a failure to give the statutory notice of a special election will not invalidate it if the electors were in fact informed of the time, place and purpose, and generally voted thereat upon a question submitted."

The case of *Town of Cortlandt* v. *Village of Peekskill* (281 N. Y. 490) does not lead to a contrary conclusion. Primarily that case specifically approved of the ruling in the *Salducco* case. The *Village of Peekskill* case involved the construction of the Village Law. Section 52 of that law provided that while an annual election of village officers should be not invalidated because of a failure to give notice, a vote upon a proposition should " be void unless due notice of the election has been given." In that case there was a complete failure to give the statutory notice, which was by posting in certain places. It should be noted that the Village Law governs many communities where conceivably the notice required would be the only notice the people could have received. Uniformity of compliance is the only way such notice could be assured. Here we are dealing with a law which applies only to the city of New York. Its requirements have to do with the conduct of an election and not with notice of the election. Some of the broad language of the *Village of Peekskill* case must be restricted to the peculiar facts of that case, which do not exist here.

To sustain the contention of the petitioner would in effect place in the hands of a small board of election officials a means of completely thwarting the will of the electorate by a failure, deliberate or otherwise, to comply with all the details prescribed by the statute to be done on election day. Certainly it would be physically impossible for the advocates of any proposition to cure any such failure occurring on election day; whereas failure to comply with technical provisions before election day could be remedied by the prompt institution of appropriate legal proceedings.

The failure to comply with the provisions of section 45 of the charter literally cannot successfully nullify the adoption of Proposition No. 1, since I find there was a substantial compliance with the requirements of that section sufficient under all the circumstances to have adequately apprised the electorate not only of the nature of the proposition but also that they were called upon to vote upon it on election day. The mere fact that only a minority of the electors saw fit to exercise their right to vote on the proposition does not establish the contrary, for it is a matter of common knowledge that that has been our experience on virtually all similar occasions, even when propositions to amend the State Constitution in matters of grave importance were posed before the people.

We come now to the third main contention of the petitioner, to the effect that the amendment abolishing the office of register of Bronx county embraces more than one subject and is, therefore, void and unconstitutional. Section 15 of article 3 of the Constitution of the State of New York provides: " No private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title." Similar provisions are found in subdivision 3 of section 13 of the City Home Rule Law, and section 36 of the city charter. It is argued that Proposition No. 1 includes more than one subject, namely, the abolition of the office of county register and the abolition of the office of county sheriff. Thus, petitioner argues, two independent offices are affected whose functions are different in scope and nature. This contention has been sustained by the learned Special Term in Kings county in a proceeding involving the validity of the amendment. (*Burke* v. *Kern*, 287 N. Y. 203.) I am unable to agree with the conclusion there reached by my learned colleague. In my opinion the amendment deals with only one subject, namely, county reform or the reorganization of county government. In *Economic Power & Construction Co.* v. *City of Buffalo* (195 N. Y. 286, 297) the court said: " The object of the constitutional provision was to advise the public and the locality and the representatives of the locality and of other parts of the general purpose of the bill so that those interested might be on their guard as to the

whole or as to the details." The test here to be applied is whether the title and the subject-matter were so worded as to be deceptive or misleading. The evils at which the constitutional and statutory provisions were directed were those of "log rolling" and the inclusion of so-called "sleepers" in statutes. Certainly here there was not present any such possible evil. The petition expressly stated that the purpose of the amendment was to reorganize county government by the abolition of the offices of county sheriff and county register and the creation of the offices of city sheriff and city register. No one in reading the title of the amendment could have been misled as to its purpose and scope. The subject covered by the amendment was the exercise of powers to effect county reform specifically granted to the city by the Constitution. These could be included in a single enactment, just as all subjects in a municipal charter may be included in a single act without violating the one-subject rule. (*Harris* v. *People of the State of New York*, 59 N. Y. 599; *People ex rel. City of Rochester* v. *Briggs*, 50 id. 553; *Scott* v. *Village of Saratoga Springs*, 131 App. Div. 347.) I hold that the amendment here did not violate the "one subject" rule and that the title properly informed the public of the general nature of the provisions of the proposition.

The argument that the amendment embodied in the proposition was so worded as to deprive the voters of an opportunity to favor the abolition of one of the county offices and to retain the other one, is entirely beside the question here involved. The one proposal to reorganize county government by abolishing both offices was properly submitted to the electorate. Had there been any considerable sentiment among the voters to retain either one of those offices, a petition for the submission of an amendment directed to that end, could readily have been obtained, filed and voted upon by following the procedure fixed by sections 44 and 45 of the charter. It may be shown, in answer to this, that had that course been taken, inconsistent amendments might thereby have been presented to, and adopted by, the electorate. The statute, however, amply deals with such a situation; for section 45 provides that "in case of a conflict between two local laws or two amendments adopted at the same election, the one receiving the largest affirmative vote shall control." Incidentally, there is a similar provision in section 19-a of the City Home Rule Law.

I do not deem it necessary to consider any other point advanced by petitioner.

The relief sought by the petitioner is denied and the petition is dismissed in its entirety. (All italics in this memorandum are by the court.)