HAROLD J. BURKE et al., Respondents, v. PAUL J. KERN et al., Constituting the Municipal Civil Service Commission of the City of New York, et al., Appellants; JAMES V. MANGANO, Individually and as Sheriff of the County of Kings, Respondent, and EUGENE J. McGUIRE, Individually and as Sheriff of the County of Bronx, et al., Interveners, Defendants-Respondents.

204

Argued December 10, 1941; decided December 10, 1941.

⌐ *William C. Chanler, Corporation Counsel* (*William S. Gaud, Jr., Seymour B. Quel* and *Stanley Buchsbaum* of counsel), for appellants. The amendment adopted by the electorate constitutes a local law within the meaning of section 8 of article 9 of the State Constitution. (*Matter of Phillips* [*Hubbard*], 284 N. Y. 152; *Matter of Mooney* v. *Cohen*, 272 N. Y. 33; *Matter of Finegan* v. *Cohen*, 275 N. Y. 432; *Johnson* v. *Etkin*, 279 N. Y. 1; *Harris* v. *White*, 81 N. Y. 532; *City of Buffalo* v. *Couteulx*, 15 N. Y. 451; *Ontario*

*Bank* v. *Bunnell,* 10 Wend. 186; *Matter of Cifelli,* 235 App. Div. 731; 259 N. Y. 524; *Matter of Bentley* v. *Simmons,* 251 App. Div. 773.) The amendment deals with the single subject of the reorganization of county offices within the city of New York, and, therefore, does not violate section 36 of the Charter. (*Conner* v. *City of New York,* 5 N. Y. 285; *Village of Gloversville* v. *Howell,* 70 N. Y. 287; *Harris* v. *People,* 59 N. Y. 599; *People ex rel. City of Rochester* v. *Briggs,* 50 N. Y. 553; *Scott* v. *Village of Saratoga Springs,* 131 App. Div. 347; *Matter of Burke* v. *Krug,* 161 Misc. Rep. 688; 272 N. Y. 575; *Matter of Mooney* v. *Cohen,* 272 N. Y. 33; *Matter of Clinton Avenue,* 57 App. Div. 166; *People ex rel. Davies* v. *Tax Commissioners,* 47 N. Y. 501; *City of Seattle* v. *Sylvester-Cowen Investing Co.,* 55 Wash. 659.) Since the right to hold office is not a vested right, and may be abrogated by abolition of the office either during or prior to the commencement of the term thereof, and since the offices of Sheriff of Kings, Queens and Bronx counties have lawfully been abolished pursuant to the Constitution, the defendants-respondents have no right to serve as Sheriff of such counties after January 1, 1942. (*Matter of Gertum* v. *Board of Supervisors,* 109 N. Y. 170; *People ex rel. Devery* v. *Coler,* 173 N. Y. 103; *Smith* v. *City of New York,* 37 N. Y. 518; *Taylor & Marshall* v. *Beckham,* 178 U. S. 548; *People ex rel. Mitchell* v. *Sturges,* 156 N. Y. 580; *Koch* v. *Mayor,* 152 N. Y. 72; *People ex rel. Gere* v. *Whitlock,* 92 N. Y. 191; *Long* v. *Mayor,* 81 N. Y. 425; *Matter of Quinn,* 152 N. Y. 89; *State ex rel. Corry* v. *Cooney,* 70 Mont. 355; *O'Connor* v. *Greene,* 174 Misc. Rep. 597; *Luckett* v. *Madison County,* 137 Miss. 1; *Browne* v. *City of New York,* 241 N. Y. 96; *Brush* v. *City of Mount Vernon,* 260 App. Div. 1048.) The petition pursuant to which the amendment was presented to the voters, the manner in which the proposition appeared on the ballot and the detailed provisions of the amendment itself met all pertinent statutory requirements. (*Matter of McKinney* v. *McGoldrick,* 266 N. Y. 665; *Peterson* v. *Martino,* 210 N. Y. 412; *Grimmer* v. *Tenement House Dept.,* 204 N. Y. 370;

*City of New York* v. *Trustees of Sailors' Snug Harbor*, 85 App. Div. 355; 180 N. Y. 527; *Matter of Mooney* v. *Cohen*, 272 N. Y. 33, 597; *Johnson* v. *City of New York*, 274 N. Y. 411; *Curtin* v. *Barton*, 139 N. Y. 505.) There was substantial compliance with the requirements of section 45 of the Charter. (*People* v. *Cook*, 8 N. Y. 67; *People ex rel. Hirsh* v. *Wood*, 148 N. Y. 142; *Sheils* v. *Flynn*, 164 Misc. Rep. 302; 252 App. Div. 238; 275 N. Y. 446; *People ex rel. Goring* v. *President of Wappingers Falls*, 144 N. Y. 616; *Salducco* v. *Etkin*, 155 Misc. Rep. 361; 244 App. Div. 681; 268 N. Y. 606; *Demarre* v. *Johnson*, 150 Ind. 419; *State ex rel. Mullen* v. *Doherty*, 16 Wash. 382; *Seymour* v. *Tacoma*, 6 Wash. 427; *Colbert Co.* v. *Thurmond*, 116 Ala. 209; *Phillips* v. *Rockhill*, 188 S. C. 140.)

*Reginald S. Hardy* and *Abram Raff* for plaintiffs, respondents. The amendment abolishing the office of Sheriff does not conform to the constitutional provisions authorizing the abolition of that office. The amendment is not a local law. (State Const. art. 9, § 8; *Adler* v. *Deegan*, 251 N. Y. 467; *People* v. *Tremaine*, 281 N. Y. 1; *Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185; *People ex rel. Gilbert* v. *Wemple*, 125 N. Y. 485; *People* v. *O'Brien*, 111 N. Y. 1; *Hanley* v. *City of New York*, 250 App. Div. 552; *Allison* v. *Welde*, 172 N. Y. 421; *People ex rel. Balcom* v. *Mosher*, 163 N. Y. 32.) The amendment abolishing the office of Sheriff of the county of Kings constitutes an illegal delegation of legislative power. (*Panama Refining Co.* v. *Ryan*, 293 U. S. 388; *Schechter Poultry Corp.* v. *United States*, 295 U. S. 495; *Village of Saratoga Springs* v. *Saratoga Gas Co.*, 191 N. Y. 123; *Moses* v. *Guaranteed Mortgage Co.*, 239 App. Div. 703; *People* v. *Ryan*, 267 N. Y. 133; *Matter of Mooney* v. *Cohen*, 272 N. Y. 33; *Matter of McCabe* v. *Voorhis*, 243 N. Y. 401; *Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.*, 170 Misc. Rep. 42; *Matter of Seignious* v. *Rice*, 273 N. Y. 44; *Matter of Small* v. *Moss*, 279 N. Y. 288; *Rosalsky* v. *State*, 254 N. Y. 117; *Matter of Richardson*, 247 N. Y. 401; *Driscoll* v. *Edison L. & P. Co.*, 307 U. S.

104.) The amendment is fatally defective in that it is vague, indefinite and unworkable. (*Matter of Becker* v. *Eisner*, 277 N. Y. 143; *Bareham* v. *City of Rochester*, 246 N. Y. 140.) The amendment provides by indirection that existing laws shall be deemed a part thereof. (State Const. art. 3, § 16; *Matter of Becker* v. *Eisner*, 277 N. Y. 143; *People ex rel. Everson* v. *Lorillard*, 135 N. Y. 285; *People ex rel. Board of Commissioners of Washington Park* v. *Banks*, 67 N. Y. 568; *People ex rel. New York Electric Lines Co.* v. *Squire*, 107 N. Y. 593; *Darweger* v. *Staats*, 267 N. Y. 290.) The amendment embraces more than one subject and is, therefore, void. (State Const. art. 3, § 15; Cons. Laws, ch. 76, § 13; New York City Charter, § 36; *People* v. *O'Brien*, 38 N. Y. 193; *Hanley* v. *City of New York*, 250 App. Div. 552; *Albert* v. *City of New York*, 250 App. Div. 555; *Economic Power & Constr. Co.* v. *City of Buffalo*, 195 N. Y. 286; *Gaynor* v. *Village of Port Chester*, 231 N. Y. 451; *Huber* v. *People*, 49 N. Y. 132.) The amendment was not properly submitted to the voters. (*Town of Cortlandt* v. *Village of Peekskill,* 281 N. Y. 490; *Matter of Wing* v. *Ryan*, 255 App. Div. 163; *Train* v. *Sisti*, 146 Misc. Rep. 362; *People ex rel. Hirsch* v. *Wood*, 148 N. Y. 142.) The direct initiative is unconstitutional. (State Const. art. 3, § 1; *Panama Refining Co.* v. *Ryan*, 293 U. S. 388; *Schechter Poultry Corp.* v. *United States*, 295 U. S. 495; *Matter of Village of Saratoga Springs* v. *Saratoga Gas Co.*, 191 N. Y. 123; *Moses* v. *Guaranteed Mortgage Co.*, 239 App. Div. 703; *People* v. *Ryan*, 267 N. Y. 133; *Stanton* v. *Board of Supervisors*, 191 N. Y. 428; *People ex rel. Unger* v. *Kennedy*, 207 N. Y. 533; *Matter of McCabe* v. *Voorhis*, 243 N. Y. 401; *Matter of Mooney* v. *Cohen*, 272 N. Y. 33.) The abolition of the offices of Sheriff of the counties within the city of New York cannot become operative until the expiration of the terms of the Sheriffs elected on November 4, 1941. (*People ex rel. Eldred* v. *Palmer*, 154 N. Y. 133; *Nova* v. *Flynn*, 139 Misc. Rep. 783; 256 N. Y. 690; *People ex rel. Davis* v. *Gardner*, 45 N. Y. 812.)

FINCH, J. The objections, which are here presented for decision, to the validity of the amendment to the New York City Charter (effective January 1, 1938), will be considered seriatim against the background of the necessary facts.

On July 3, 1941, there was filed in the office of the Clerk of the City of New York an initiating petition of proposed amendments to the City Charter to be submitted to the voters of the city. The purpose of this petition was to abolish the office of Sheriff and Register in each of the five counties within the city and transfer their duties and functions, except in small part, to new officers to be called the City Sheriff and City Register, who are to be appointed by the Mayor after competitive civil service examination. This initiating petition was signed by approximately 92,000 qualified electors.

In the general election held in the city on November 4, 1941, a proposition known as Proposition No. 1 appeared in the following form on the voting machine: " Shall the proposed amendment to the New York City Charter to reorganize county government by abolishing the county offices of Sheriff, Register, Register of Deeds and Registrar, creating the offices of City Sheriff and City Register, to be filled by appointment after competitive civil service examination, and assigning the functions of the offices thereby abolished to the City Sheriff, the City Register and the City Department of Correction, be approved? " This proposition was adopted by a plurality of slightly less than 300,000 votes. At the same election persons having been duly nominated were elected to the offices which the above proposition was designed to abolish.

The plaintiffs are taxpayers of the city. They seek to invalidate the above amendment to the New York City Charter, as unconstitutional and otherwise invalid, and bring this action to enjoin the Municipal Civil Service Commission from conducting an examination for the offices of City Sheriff and Register; the Mayor from appointing any persons to those offices; and to declare the officers

elected as above the duly elected officers for the ensuing four years. At Special Term it was held that the amendment was a local law within the meaning of the Constitution (Art. IX, § 8), but the amendment was declared void because in contravention of the State Constitution (Art. III, § 15), and of the City Home Rule Law (Cons. Laws, ch. 76, § 13, subd. 3), and of a similar provision in the City Charter (§ 36). The Appellate Division affirmed with one justice dissenting.

We pass at once to the merits of the objections urged.

The first objection urged against the validity of the amendment is failure to conform to the provisions of the State Constitution, in that the proposition was not properly enacted as a local law. The legislative power of the State is vested in the Senate and Assembly (State Const. art. III, § 1). It may not delegate that authority to any other legislative body or to the electors except where the Constitution authorizes such delegation. Even then it may delegate legislative power only in manner and form permitted by the Constitution.

" Direct legislation in cities must always rest on some constitutional or statutory grant of power. Government by representation is still the rule. Direct action by the people is the exception." (*Matter of McCabe* v. *Voorhis*, 243 N. Y. 401, 413.) Therefore, only within the framework provided by this County Reform Amendment (State Const. art. IX, § 8) may the delegated power be exercised. Within that framework, the objection is urged that action may be taken only by means of a local law enacted by the City Council which is the local legislative body. This objection fails to differentiate between a local law and the procedural method adopted for its enactment. This court, in considering what constituted a local law under this Home Rule Amendment, said " No limitation is here found upon the method by which these local laws shall be adopted * * *." (*Matter of Mooney* v. *Cohen*, 272 N. Y. 33, 39.) The Constitution of the State does not provide in the Home Rule Amendment or the County Reform Amendment how

a local law shall be enacted. It placed upon the Legislature the duty of determining how local laws may be enacted. The Legislature has taken cognizance of this distinction by expressly providing in section 2 of the City Home Rule Law, which implemented the County Reform Amendment, that the term " local law " shall include enactment by petition and ratification by popular vote as provided in a city charter. The test of the validity of a local law is whether, within the field of legislation delegated to the city, it has been enacted in accordance with the provisions of the statute. The New York City Charter (§ 44) provides that an amendment to the charter may be adopted either by action of the local legislative body, or by vote of the electors of the city upon the petition of electors of the city, for the purpose of abolishing any elective office, including a transfer of powers to the newly created office or other disposition of such powers. Thus both the Legislature and the Court of Appeals have upheld the validity of this procedure for enacting local laws. (City Home Rule Law, §§ 2, 19-a; N. Y. City Charter, § 44; *Mooney* v. *Cohen*, 272 N. Y. 33; *Johnson* v. *Etkin*, 279 N. Y. 1.) No difference can be discerned between a local law enacted within the Home Rule Amendment (State Const. art. IX, § 12), and under the County Reform Amendment (State Const. art. IX, § 8). The County Reform Amendment, by providing that in counties of the city of New York the city is vested with power by local law to abolish the office of any county officer, with certain exceptions not here material, and to assign the function of such officers to city officers, is directly applicable in the case at bar. The Sheriff from earliest times has been a county officer (Maitland, Constitutional History of England, p. 41; *Matter of Grifenhagen* v. *Ordway*, 218 N. Y. 451); and this is so even though these offices, being county offices, are thereby also state offices. (*Finn* v. *City of New York*, 282 N. Y. 153.)

It is next urged that this amendment is void as embracing more than one subject, and as such violates not only the Constitution (State Const. art. III, § 15), but also the

City Home Rule Law (§ 13, subd. 3), and the New York City Charter (§ 36), all of which provide in substance that no local bill or law shall embrace more than one subject which shall also be expressed in the title. The purpose of this provision was to prevent concealment and surprise to the members of the Legislature and to the public at large, and to prevent legislative "logrolling." (*Economic Power & Constr. Co.* v. *City of Buffalo*, 195 N. Y. 286.) This is perhaps best illustrated by the occasion for the creation of this constitutional provision, which was added as a result of the success of Aaron Burr in persuading the Legislature to grant him a charter for a water company which had hidden among its provisions a clause enabling him to found a bank. (*Matter of City of New York* [*Clinton Avenue*], 57 App. Div. 166.)

In applying the constitutional provision, the courts have formulated various tests, chief among which has been a limitation of the subject-matter to one subject, which, however, may embrace the carrying out of that subject-matter in various objective ways, provided the objectives are naturally connected with the subject-matter and the title could be said to apprise the reader of what may reasonably be expected to be found in the statute. (*Conner* v. *City of New York*, 5 N. Y. 285; *Village of Gloversville* v. *Howell*, 70 N. Y. 287.)

In *Conner* v. *City of New York* (5 N. Y. 285) the same objection as here urged was made to an act entitled "An act in relation to the fees and compensation of certain officers in the city and county of New York." The act affected the fees and functions of the Surrogate, County Clerk, the Register, and certain other officers named therein. This court held that there was no violation of the one-subject rule. The subject-matter was the change in compensation of these officers from a fee to a salary basis, which was expressed in the title. The objectives were the offices affected in the carrying out of this subject-matter. Separate bills were not required to carry out this subject-matter in reference to each of the offices named. Judged by the fore-

going test and the authorities, the subject-matter in the case at bar was county reorganization, which was carried out in detail by the abolition of the county offices involved. This principle has often been applied in unquestioned legislation. An entire city charter or a form of county government may be the subject of a single enactment. An even closer analogy to the case at bar is that in 1912 the Legislature, by a single statute, created the new offices of Sheriff and ·Register of Bronx county and transferred to those newly-created offices the powers which the Sheriff and Register of New York county had formerly exercised in the territory constituting the new county of Bronx.

Objection is urged to the amendment in that no provision was made for the elector who desired to abolish one office and not the other. The only plan submitted was to effect economy in the manner indicated. If the voter did not approve he disapproved of the plan as a whole.

It is next urged that the amendment in question violates article III, section 16, of the State Constitution, which prohibits the insertion by reference of an existing law rather than including therein the text in full. This objection arises from the fact that the functions, powers and duties of the old officers are assigned to the new. These provisions are similar to provisions invariably employed under like circumstances, which have been held valid by this court. In *Curtin* v. *Barton* (139 N. Y. 505) the purpose of the act was to establish a Municipal Court in the city of Syracuse in place of courts held by justices of the peace within the city, and to make applicable to the new court the jurisdictional provisions previously applicable to the Justices' Courts. In rejecting the contention that this statute violated the same section of the State Constitution, the Court of Appeals held that all it was necessary to say was that the current of authority in the court has settled the question against the contention, citing *People ex rel. Board of Commissioners* v. *Banks* (67 N. Y. 568), *People ex rel. New York Electric Lines Co.* v. *Squire* (107 N. Y. 593), and *People ex rel. Everson* v. *Lorillard* (135 N. Y. 285). Respond-

ents rely upon *Matter of Becker* v. *Eisner* (277 N. Y. 143), but there the situation was different. The statute in the *Becker* case did not abolish any existing agency and transfer its powers to a newly-created agency. On the contrary, the statute attempted to make automatically applicable to a different agency, namely, the Board of Higher Education, all the laws then appliable and which might be enacted in the future with reference to another continuing agency, namely, the Board of Education. In the case at bar, on the other hand, as in *Curtin* v. *Barton* (139 N. Y. 505), *People ex rel. Board of Commissioners* v. *Banks* (67 N. Y. 568) and other like cases cited, the principle is made applicable that reference to procedure and jurisdiction definitely established is not violative of the constitutional provision.

It is next urged that even though the amendment is not unconstitutional, it was not properly submitted because lacking in a sufficient number of signatures. This objection is based upon the claim that section 19-a of the City Home Rule Law overruled section 44, subdivision b, of the City Charter, and prescribed the only method by which a local law could be initiated by petition and ratified by the electorate. Section 44, subdivision b, of the Charter requires 50,000 signatures and, as already noted, this petition contained upwards of 92,000. The City Home Rule Law (§ 19-a) provides that signatures must equal ten per cent of the total number of votes cast for Governor in the preceding election. This would require some 213,000. Section 19-a was enacted after the approval of the Charter containing section 44, subdivision b, and, therefore, to the knowledge of the Legislature this section without further action was to become a law. Section 19-a is a general provision applying to the State as a whole. It, therefore, is subject to the legal principle that a provision applying generally to the State as a whole does not repeal by implication a special provision applying to a particular portion of the State. No expressed repeal of section 44, subdivision b, is contained in section 19-a. Moreover, section 33 of this same City Home Rule Law expressly provides that it was not intended to repeal by implication any existing provision

of law. Since the City Home Rule Law thus negatives any express or implied repeal of section 44, subdivision b, the objection is without merit. In addition, section 36 of the City Home Rule Law provides that all existing charters and local laws, so far as not inconsistent with this chapter, shall continue in force. Moreover, section 19-a, by its very terms, does not set up an exclusive method of enactment, since its opening sentence provides "A local law amending a city charter also may be adopted in the following manner." The word " also " expresses a non-exclusive application. For all these reasons section 44, subdivision b, of the New York City Charter, which has the force and effect of a direct legislative act, is not in conflict with section 19-a of the City Home Rule Law.

It is next urged that the amendment was not properly submitted to the voters. Section 45 of the New York City Charter provides that a proposition to amend the charter shall contain the title of the local law or a brief statement of the subject of the amendment, and that the City Clerk, with the advice of the Corporation Counsel, shall prepare an abstract concisely stating the title or subject and the purpose and effect thereof and forthwith transmit such proposition and such abstract to the election officers charged with the duty of publishing the notices and furnishing the supplies for such election. It is further provided that " A sufficient number of copies of such abstract shall be printed, delivered with the other election supplies and distributed to the electors at the time of the registration of voters and at the election."

In the case at bar it is contended that section 45 was not complied with in two respects, (1) that a sufficient number of copies of the abstract were not printed, and (2) that additional abstracts were not delivered to the local boards of election on Election Day. The facts in this regard are stipulated by counsel as follows: Prior to the beginning of registration week, the Board of Elections in the City of New York caused to be printed 1,638,400 copies of the abstract of Proposition No. 1. The contract for printing also provided that further copies were to be furnished to

the Board of Elections if required. No further copies were ever requested or obtained. On the opening day of registration week, there were delivered to each local Board of Elections at the voting place in each election district throughout the city, 400 copies of the abstract, together with instructions that if lacking in any of the above supplies, they were to notify immediately the commanding officer of the police precinct in order that he might send an officer to the borough office of the Board of Elections to obtain the additional supplies needed. Four hundred copies of this abstract were readily available to the electors throughout registration week at each of the polling places. In no case did any local board request additional copies of the abstract during registration week. A total of 12,800 copies of this abstract were delivered to the main office of the Board of Elections and its five borough offices, and kept on hand from the beginning of registration week until after Election Day. As stated in the stipulation, " Throughout said period, any persons requesting copies of said abstract from said offices received same."

No additional copies were printed subsequent to the beginning of registration week, and no additional copies were delivered to the local Board of Elections on Election Day. On Election Day two sample facsimiles of the face of the voting machine were delivered with the other election supplies to each Board of Elections at the voting place. Each of these samples set forth Proposition No. 1 as it appeared on the voting machine.

Since in the city of New York personal registration is required of all electors, no elector who sought information lacked an abstract, since no requests went unheeded. For this reason the abstracts could only assist in more intelligent voting on Election Day and not as notice of the time and place of election. Since, however, no requests for these abstracts went unfulfilled, and facsimiles were present in all polling places, and the title of the proposition appeared on all voting machines, without which voting could not be had, it would appear that no further information was

desired. The statute provides merely that a sufficient number of copies of the abstract shall be printed. In view of the fact that only a proportion of the voters desired to exercise their privilege of voting for or against this amendment, namely, some 500,000 out of over 2,000,000 votes, it would appear that the Board of Elections, in printing 1,638,400 copies, or some three times the number of those voting on the proposition, was not negligent in the endeavor to supply a sufficient number of copies. Certain it is that this provision of the statute is directory only and in accordance with the stipulated facts there was substantial compliance with the statute. An election is void where the electors do not receive notice of the time and place of the election, and the Legislature, not the courts, must determine how each notice shall be given. (*Town of Cortlandt* v. *Village of Peekskill*, 281 N. Y. 490; *Lane* v. *Johnson*, 283 N. Y. 244.) The will of the electors can be expressed only where the electors have received notice of the election, and notice given in manner not authorized by the Legislature is without legal effect. The will of the electors expressed at an election, of which legal notice has been given, may not be defeated by the failure of officials to carry out directions intended to make the machinery of election more effective. The provisions of statutes intended for that purpose are directory rather than mandatory. In such case substantial performance of a statute is sufficient, and in some cases even failure to perform may be disregarded. (*Salducco* v. *Etkin*, 155 Misc. Rep. 361; 244 App. Div. 681; 268 N. Y. 606; *People ex rel. Goring* v. *President, Vil. of Wappingers Falls*, 144 N. Y. 616.)

It is. further urged that the amendment may not become operative until the expiration of the terms of the respective officers elected on the 4th of November, 1941. Plaintiffs claim that the officers so elected have the right to serve for four years commencing January 1, 1942. That contention ignores the fact that the amendment abolishing these offices takes effect on January 1, 1942. Article IX, section 8, of the Constitution authorized the city of New York to

abolish these offices. Moreover, this constitutional provision expressly designates those incumbents who may serve out their terms despite the action of the city under the provisions of this amendment, namely, the elective county officers who were in office at the time that article took effect. Article IX, section 8, took effect January 1, 1939. (State Const. art. XX, § 1.) Accordingly, the provisions quoted above, as applied, meant that the county officers who were in office on January 1, 1939, were permitted to fill out their then terms. Otherwise, this section vested the city with unconditioned power to abolish these county offices. Since by the amendment the city has chosen to make the abolition of these offices immediately effective on January 1, 1942, it follows that the offices will be abolished upon the taking effect of this amendment. The language used is capable of no other construction. The Legislature has power to determine its own policy with reference to a public office or a public officer. Exercising that right it may shorten or lengthen the term of the office or abolish it altogether, subject only to the restrictions, if any, contained in the State Constitution. (*Koch* v. *Mayor*, 152 N. Y. 72; *Matter of Gertum* v. *Board of Supervisors*, 109 N. Y. 170.) In accordance with the express language of the County Reform Amendment and the decisions of this court, these officials have no vested right in the respective public offices. They were elected so that, in the event the offices were not abolished, there would be incumbents for the offices.

Other objections are urged. We have examined them with care but they do not show sufficient merit to require detailed reasons for their rejection.

It follows that the judgments appealed from should be reversed and the complaint dismissed, without costs.

RIPPEY, J. (dissenting). For reasons which seem to me fundamentally sound and which I shall briefly outline, I am constrained to dissent from the decision about to be handed down in this case.

The purpose of the amendment to the New York City Charter, as expressed in the petition for submission of the amendment to the electors of the city of New York, was " to reorganize County Government by abolishing the County offices of Sheriff, Register, Register of Deeds and Registrar, creating the offices of City Sheriff and City Register and assigning the functions of the offices hereby abolished to the City Sheriff, the City Department of Correction and the City Register." The amendment was proposed " pursuant to section Eight of Article IX of the Constitution of the State of New York and sections forty-four and forty-five of the New York City Charter." Those sections of the City Charter relate only to the manner of submission of the proposed amendment. Assumed power to so amend the Charter is asserted to be derived exclusively from the provisions of article IX, section 8, of the Constitution.

The amendment (§ 1031) provides that " there shall be a city sheriff who shall be appointed by the mayor after competitive examination conducted by the municipal civil service commission in accordance with the civil service law." Section 1032 provides that the offices of sheriff of the counties within the city are abolished and that the " functions, powers and duties of the said offices are assigned to the city sheriff, except as otherwise provided by sections six hundred twenty-three and nine hundred fifty-five-a of this charter." Section 623 has to do with the functions of the Commissioner of Correction and 955-a (a new section) with the freezing in the new office of all civil service employees of the abolished offices. Section 1051 provides for a City Register to be appointed in a manner similar to the City Sheriff, and section 1052 for abolishing the offices of Register; Register of Deeds and Registrar in the several counties and the assigning of the functions of those offices to the City Register except as otherwise provided in section 955-a. The abstract of submission appearing on the voting machines and furnishing the only information to the electors concerning the proposal to be voted on read: " Shall the.

proposed amendment to the New York City Charter to reorganize county government by abolishing the county offices of Sheriff, Register, Register of Deeds and Registrar, creating the offices of City Sheriff and City Register, to be filled by appointment after competitive civil service examination, and assigning the functions of the offices thereby abolished to the City Sheriff, the City Register and the City Department of Correction, be approved ? "

Article IX, section 8, of the Constitution provides, so far as material, that " In counties in the city of New York the city of New York is hereby vested with power from time to time by local law, to abolish the office of any county officer other than judges, clerks of counties and district attorneys, and to assign any or all functions of such officers to city officers, courts or clerks of counties, and to prescribe the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of the persons holding such offices and the employees therein, and to assign to city officers any powers or duties of clerks of counties not assigned by this constitution." That is the only authority claimed for the power to submit the amendment.

That provision in the Constitution had no purpose to provide for the reorganization of county government. Except in the particulars mentioned in article IX, section 8, legislative power to provide for and regulate the organization and government of counties, including that of the five counties wholly included in the city of New York, rests exclusively in the State Legislature (Art. IX, §§ 2, 4). Nothing that could be done by the city under the provisions of article IX, section 8, could effectuate a reorganization of county government or permit a county to continue to function. Its purpose was primarily to enable the city of New York by appropriate legislation to abolish certain county offices as such and to transfer their duties and functions to city officers, courts or clerks of counties, which, as a part of the then existing city and county governments, would absorb and thereafter perform the constitutional and statutory functions of those certain offices in one or

more of the five counties embraced within the geographical boundaries of the city of New York. It was a special provision of the Constitution designed to apply only to a special case — an exception to the otherwise universal rule obtaining wherever representative form of government exists in this country and particularly enunciated in our own State Constitution that the legislative power of the state is vested exclusively in the State Legislature (Art. III, § 1) and the provision must, therefore, be strictly construed.

Having that cardinal rule of construction in mind, a brief additional, but not all inclusive, analysis will further indicate that the city far exceeded any power conferred by article IX, section 8, in its abortive attempt to *reorganize* the organization and government of the five counties of the city of New York. It confers power " to abolish the office of any county officer." Assuming, but not conceding, that the necessary legislative action may be taken by direct vote, the constitutional provision confers no power on the city at the same time to abolish functionally different groups of offices in five different counties. It confers no power to permit the voters in any one county unit to abolish county offices in another county unit. For example, the county of Richmond has no office of Register. No authority is conferred on the voters of Richmond county to abolish the offices of Register in the four other counties, even though they are the electors of the city unit for city purposes. It confers no power upon the city to group various county offices of the various counties within the city in such a way that it becomes impossible for electors of one county, which still exists and continues as a separate and distinct unit of government, to decide for themselves whether they desire to abolish a certain office within their own county. It is no answer to say that, if the voters in Kings wish to abolish the office of Register in that county but wish to retain its office of Sheriff, they can rid the county of the office of Register by doing what they do not wish to do by ridding the county of the office of Sheriff. How could any scheme be devised more surely to frustrate the will of the

voters or to make more certain that they cannot freely register their will than that devised by the submission here involved? Under the proposal, the voters were required to vote to abolish the offices of Sheriffs and Registers and other offices of five different counties or vote to abolish none of them or to refrain from voting at all on the proposition, which latter, significantly, was the position taken by a large majority (1,517,505 out of a total vote for Mayor of 2,238,947) of the qualified electors of the counties involved aggregating 2,450,868. We may not speculate that all who approved the amendment (507,350) approved of all of its provisions. Rather, it is probable that voters interested only in separate objects may have combined, by necessity, in behalf of all of the different objects. Nor can it be said that those who voted against the proposition (220,092) did so because they wished to defeat all of its objects. That kind of " log rolling " was condemned by this court in *Economic Power & Constr. Co.* v. *City of Buffalo* (195 N. Y. 286, 296). It is no answer to say that the proposal is solely a scheme for county reorganization as falsely appears in the petition and abstract of submission and thus embraces only one subject since no power is conferred on the city to reorganize counties. Nothing whatever is said in the proposition submitted about one of the cardinal purposes of the amendment which was to transfer all of the civil service employees in the many offices abolished to the two newly created offices and to freeze them into the city service without civil service examination for positions in the new offices. No power is conferred to create new offices, either for the same or different units of government. Otherwise its so-called purpose to effect economy might be entirely frustrated. By its express terms power is given only to transfer functions of the abolished offices to existing " city officers, courts or clerks of counties."

The amendment here embraces more than one subject and is void (State Const. art. III, § 15; City Home Rule Law, § 13, subd. 3; N. Y. City Charter, § 36). This was the ground upon which the learned justice at Special Term

granted judgment for plaintiffs and with his reasoning and excellent opinion I am heartily in accord. An adequate prop cannot be found in *Conner* v. *City of New York* (5 N. Y. 285) and *Village of Gloversville* v. *Howell* (70 N. Y. 287) to sustain the submission. Neither case is, either directly or by analogy, authority for the point upon which it is cited. In the *Conner* case the purpose of the act was to change the compensation of various officers in a particular governmental unit by legislative act and it dealt with the single subject of compensation of public officers. In the other the pertinent question related to the validity of an act reorganizing and providing a charter for the village of Gloversville which failed to mention specifically a provision for the selling within the village of intoxicating liquors and another provision for punishment for selling without a license (See *Harris* v. *People,* 59 N. Y. 599, 601).

Notice required by section 45 of the Charter and section 18 of the City Home Rule Law of the submission of the amendment was not given. Those provisions of law required the preparation of an abstract of the amendment concisely stating the title, subject, purpose and effect thereof and its transmission to the election officers charged with the duty of publishing the notice of and furnishing the supplies for the election. It was mandatorily required that a sufficient number thereof be printed and delivered with other election supplies and " *distributed to the electors at the time of the registration of voters and at the election.*" It may be assumed that a reasonably sufficient number of the abstracts were printed although the total number printed was not much more than one-half the number of electors entitled to vote. All printing and distribution to election boards occurred prior to the first registration day which was more than four weeks prior to the election. The abstract of this amendment was included and buried in the midst of a list of propositions amending both the State Constitution and the Charter. There is no showing that any of such abstracts were distributed to registrants. No copies of the abstract were delivered to the election officials on election day.

None of such abstracts were available at the polling places for distribution to or the information of voters on election day. As a substitute for the legal requirement, it is stipulated, " two sample facsimiles of the face of the voting machine * * * were delivered with the other election supplies to each local Board of Elections at the polling place. Each said sample set forth Proposition No. 1 as the same appeared on the voting machines used at said election." What use was made of it at the several polling places does not appear. Though it had been given wide publicity at the voting booths on election day, it was a statement only of the question submitted and gave no information as to the contents of the amendment and could not, on that account alone, satisfy the legal requirement for notice. By the express terms of the amendment, whether true in fact or not, its subject was the reorganization of county government. The purpose of the statutory requirement for availability and distribution of the abstracts on registration and election days was to enable the voters to learn what the proposition upon which they might vote was about. The requirement did not relate alone to having the abstracts available. It was mandatory that they be distributed on those days. Voters were not required to search for them. The notice was insufficient and the amendment, though adopted, must on that account be held void (*Town of Cortlandt* v. *Village of Peekskill*, 281 N. Y. 490, 496). This court unanimously said in that case: " The mere fact that no harm was done, if such be a fact, and that no voters were disfranchised by virtue of the irregular notice and the failure to post any notice whatsoever is not material. When the statutes prescribed methods by which propositions changing the form and structure of government shall be submitted, it cannot be left to the discretion of the court to say that substantially no notice whatever is required or that the specific provisions of the statutes may be overridden. There must be some uniformity in matters of this kind. The question is one of legal notice and not one of actual notice." The controlling effect of that decision

■

cannot be waved aside by any assertion that the application of the rule there laid down was limited to failure only to give notice of the time and place where the election was to be held.

Furthermore, only an amendment to the Charter may be the subject of the process of initiative and referendum (Charter, § 44). But this is concededly not an amendment within the meaning of article IX, section 8. By the terms of the Constitution such a change in governmental structure can be made only by a " local law." Concededly, the making of such change was a legislative act. The framers of the Constitution did not define what was meant by the expression " local law " as used in article IX, section 8, nor lay down any method by which such a law might be enacted. However, the Constitution provides that the legislative power of the State is vested in the Senate and Assembly (Art. III, § 1). What is meant by a " local law " depends upon its definition at the time the Constitution was adopted, not upon some definition later formulated by the Legislature (1 Cooley on Constitutional Limitations [8th ed.], p. 124). We take the words used and give them " not only their ordinary meaning but that which previous acts, measures and reports intended them to have " (*People* v. *Tremaine*, 281 N. Y. 1, 12). We may safely look to the City Charter which provides, not alone that all legislative power shall be vested in the Council, but that it has " the sole power to adopt local laws under the provisions of the city home rule law or otherwise " (§ 21). That provision has been authoritatively construed to exclude amendments to the Charter adopted other than as local laws by the Council (Report of New York City Charter Revision Commission, 1936; Tanzer's New York City Charter, pp. 480, 488). Any other method of adopting a legislative act is the exception to the universally basic rule of legislating only by representative action. " Direct legislation in cities must always rest on some constitutional or statutory grant of power " (*Matter of McCabe* v. *Voorhis*, 243 N. Y. 401, 413). Nowhere in the Constitution or

statutes is found any authority to legislate concerning the matter here involved for the city of New York by " local law " or otherwise by direct action or by any process except by action of the Council.

Many other interesting and important questions are raised and discussed in the exhaustive briefs submitted by counsel but, in view of what has been said above, they need not be considered.

The judgments appealed from should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, LEWIS and DESMOND, JJ., concur with FINCH, J., RIPPEY, J., dissents in opinion in which CONWAY, J., concurs.

Judgments reversed, etc.