COUNTY OF NASSAU et al., Plaintiffs, *v.* JOHN D. BENNETT, as Surrogate of the County of Nassau, et al., Defendants

Supreme Court, Special Term, Nassau County, July 10, 1962.

*Bertram Harnett, County Attorney,* for plaintiffs. *Maurice A. Pompan* for Maurice Weingold, defendant. *Louis J. Lefkowitz, Attorney-General,* for John D. Bennett, as Surrogate of the County of Nassau, defendant.

FRANK A. GULOTTA, J. These several motions bring up for review the constitutionality of section 125-b of the Surrogate's Court Act, which was added April 18, 1962, as chapter 574 of the Laws of 1962. The purpose of this act was to create the office of Public Administrator in Nassau County, similar to such office as it exists in Westchester County (under § 124), in Erie County (§ 125), and Suffolk County (§ 125-a).

The alleged unconstitutionality is based on section 16 of article III of the State Constitution, reading as follows: " § 16. Existing law not to be made applicable by reference. No act

shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act.''

Section 17 reading in relevant part as follows:

'' § 17. Cases in which private or local bills shall not be passed * * *. The legislature shall not pass a private or local bill in any of the following cases:
* * *

'' Creating, increasing or decreasing fees, percentages or allowances of public officers, during the term for which said officers are elected or appointed.''

And also, section 1 of article IX reading in part as follows:

'' § 1. Counties; organization and government; restrictions on legislature with respect to laws affecting.
* * *

'' (b) The legislature shall provide by law for the organization and government of counties. No law which shall be special or local in its terms or in its effect, or which shall relate specially to one county only, shall be enacted by the legislature unless in its application, if any, to counties outside the city of New York it complies with the requirements of subdivision (c) of this section * * *.

'' (c) The legislature shall not pass any such law affecting a county or counties outside the city of New York unless

''(1) such law applies alike to all such counties; or

''(2) such law applies alike to all such counties which have not adopted alternative forms of goverment pursuant to the provisions of section two of this article and, if it applies also to one or more of the counties which have adopted such alternative forms, meets the requirements of paragraph (3) of this subdivision with regard to each of such counties; [or]

'' (3) such law is requested by the board of supervisors or other elective governing body of each county to be affected outside the city of New York and, in any county affected which has an elective county executive officer under an alternative form of government, the request is either concurred in by such executive officer or, in the absence of such concurrence within ten days of its approval by the governing body, is reconsidered and passed by at least a two-thirds vote of all of the members of such body; or

'' (4) The legislature receives a certificate of necessity from the governor reciting the facts which in his judgment require the passage of such law and subsequently approves it with the concurrence of two-thirds of the members elected to each house.''

Taking these points up in inverse order, first as to section 1 of article IX, it is conceded that no home rule message or certificate of necessity preceded the enactment of the aforesaid law and therefore the restrictions on local legislation, if applicable, come into play. It will be observed that while this law is specialized and local by its very terms, applying as it does to one named county, and thus seeming to fall afoul of the prohibition, this is not necessarily the case if the second sentence is read in its context. By the first sentence the curtailed power of the Legislature is confined to laws dealing only with the '' organization and government '' of counties and not with local laws in general. Words such as these many times are employed as words of art, having a special, legal meaning which is often quite different from their literal or dictionary definition. This is well illustrated in the case of *Adler* v. *Deegan* (251 N. Y. 467) where the question considered was the constitutionality of the then new Multiple Dwelling Law as applied to premises in the City of New York. The Constitution at that time (1929), as applied to New York City, had a home rule provision considerably broader than the one with which we are concerned here.

Section 2 of article XII, as it then existed, prohibited the Legislature from passing '' any law relating to the property, affairs of government of cities, which shall be special or local either in its terms or in its effect ''. It was acknowledged in that decision that while the word '' affairs '' was broad enough to include a measure such as the Multiple Dwelling Law, which was essentially a public health measure, nevertheless it was likewise an affair of the State as well, and as such was not put beyond the bounds of unrestricted State legislation, although seemingly it was prohibited.

In the instant case we are dealing with language much more circumscribed, in that neither the *affairs* nor the *property* of the local government are mentioned, but only its organization. We are likewise dealing with an area, namely the administration of decedents' estates, the regulation of which is essentially a State function, as witness our Surrogate's Court Act which is uniformly applicable throughout the State, and yet plaintiff contends this is exclusively a matter of county government. I think it clear that this legislation is not concerned with county '' organization '' or '' government ''.

*Farrington* v. *Pinckney* (1 N Y 2d 74) is not really in point on the question we have to consider in the present case. That case was concerned with the constitutionality of a law setting up a jury system throughout the State, but which varied the applica-

tion of the law in accordance with a population test by counties. The attack there was principally based on another subdivision of section 17 of article III which specifically deals with jury systems. In order to sustain the legislation it was necessary to find that the bill was not local, and the court did so by approving a population classification system which bore a rational relationship to particular localities, where the very existence of a larger or smaller population, as the case may be, justified a different system for picking juries. It was pointed out toward the end of that opinion, that since the court had come to the conclusion that the legislation was *general* within the meaning of section 17 of article III, it did not and could not reach the special problem which is presented by section 1 of article IX, since to survive the first test the law must be general, and if it is, that automatically eliminates the second test.

I have approached the problem from the other side because here, dealing with a single named county as we are, we obviously must be dealing with a local law, and therefore in considering the applicability of section 17 of article III to our case, our sole inquiry is: Does the legislation decrease the fees of a public officer during the term for which he was appointed? The argument has been made that since the County Treasurer is appointed to serve at the will of the County Executive, he has no term. I am not satisfied that a fair reading of this particular subdivision would permit such a narrow construction. For instance, if we were dealing with a State law that actually cut the salary of the County Treasurer while he was serving as such, I am not at all sure that it would withstand the constitutional attack, but we do not have that here. The County Treasurer, under section 118 of the Surrogate's Court Act, may be appointed as administrator of an estate only when no person entitled to take a share in the estate will accept the appointment, and provided further that the Surrogate, in his discretion, decides to so appoint him. After his appointment section 123 of the Surrogate's Court Act confers on him the same powers and rights of other administrators and allows him to keep the fees earned in addition to his salary as County Treasurer. By the creation of the office of Public Administrtor who, under section 118, has an absolute priority over the County Treasurer, the County Treasurer can in no sense be said to have been deprived of fees which he has not earned and the very right to which depended upon a future discretionary act by the Surrogate. As to the estates in which he has already been named we may have a different problem, and more will be said about that later.

The third objection based on section 16 of article III of the State Constitution relating to incorporation by reference, on the surface at least, presents a point which would seem to be violated by several subdivisions of the questioned enactment.

Subdivision 9 of section 125-b says: "All provision of law, not inconsistent herewith, conferring jurisdiction, authority or power on the county treasurer relating to the office of public administrator in the several counties of the state, shall apply to the office hereby created."

Subdivision 10 states: "All other provisions of law, not inconsistent herewith, conferring jurisdiction, authority or power on, or otherwise relating to the office of public administrator in the several counties of the state, including the office of public administrator of the several counties of the city of New York, or the administration of estates, shall apply to the office of public administrator of Nassau county and to the administration of estates committed to him."

Subdivision 12 states: "The public administrator shall have all the powers given by law to any public administrator or county treasurer, including but not limited to, the powers to administer any estate the assets of which do not exceed one thousand dollars without the granting of letters; to sell all personal property at public auction; to sell at private sale in such manner as the surrogate may direct; to take possession of, manage and collect the rents of real property of an intestate; to pay funeral charges of the deceased and adjust and pay all lawful claims of the estate; and to distribute without an accounting proceeding the assets of any estate where the gross value is not more than one thousand dollars, and to take the costs ordinarily allowed by the surrogate upon the entry of a decree upon a final accounting."

Here again, however, in this sphere it has been settled by established law that things are not what they seem on the surface. In *People ex rel. New York Elec. Lines Co.* v. *Squire* (107 N. Y. 593, 602) it was pointed out that the "object and intent of [this] constitutional provision was to prevent statute laws relating to one subject from being made applicable to laws passed upon another subject, through ignorance and misapprehension on the part of the legislature, and to require that all acts should contain within themselves such information as should be necessary to enable it to act upon them intelligently and discreetly", and it was further held than an enactment of 1885 which incorporated, by reference, a law of 1884, and added more stringent enforcement provisions was not invalidated by reason of the incorporation.

In *People ex rel. Everson* v. *Lorillard* (135 N. Y. 285, 291) it is stated: "When a statute in itself and by its own language grants some power, confers some right, imposes some duty, or creates some burden or obligation, it is not in conflict with this constitutional provision because it refers to some other existing statute, general or local, for the purpose of pointing out the procedure, or some administrative detail, necessary for the execution of the power, the enforcement of the right, the proper performance of the duty, or the discharge of the burden or obligation." It was held therefore that a condemnation law which borrowed from another statute the procedure by which the lands were to be acquired and the administrative acts on the part of the city authorities to procure the money for payment of awards, was not repugnant to this constitutional provision.

In more modern times these principles were followed in *Burke* v. *Kern* (287 N. Y. 203) where the offices of the Register and Sheriff in the several counties of the City of New York were abolished and city-wide offices substituted in their place and the functions, powers and duties of the old offices assigned to the new by incorporating them by reference. It was pointed out that this procedure had invaribly been employed in the past under like circumstances and was valid.

It distinguished *Matter of Becker* v. *Eisner* (277 N. Y. 143) where such incorporation by reference was held unconstitutional in that there the attempt was made to automatically make applicable to the Board of Higher Education not only all the existing laws then applicable to the Board of Education, but also those to be enacted in the future, since the Board of Education was to continue in existence. In a sense we have that here, since the allusion to the powers of the several other County Public Administrators, particularly those of the counties within the City of New York who have a whole article of the Surrogate's Court Act (art. 8-A) devoted to their special powers, takes over powers which are to continue and presumably may be amended in the future.

The reference to all the other Public Administrators in the several counties of the State is unnecessarily cumbersome and circuitous. Each of their particular legislative acts has the same allusion whereas a simple reference to the powers of an ordinary administrator such as is contained in section 123, in describing the powers of a County Treasurer when acting as an administrator, plus the more extensive powers which are possessed by New York City Public Administrators, where it is desired to confer those powers, would seem to have been

enough. However, applying the so-called lack of confusion test of the *Squire* case (107 N. Y. 593, *supra*), I do not think it can be said the legislators would be confused by these references to general laws to be found in the Surrogate's Court Act, and while the effect of such incorporation is to make future amendments to article 8-A, for instance, applicable to a Public Administrator of Nassau County, this does not differ in any essential way from the quite common incorporation of the whole Civil Practice Act together with future amendments into the practice acts of lesser courts, such as we find in section 261 of the Nassau County District Court Act (L. 1939, ch. 274, as amd.) and in section 15 of the New York City Municipal Court Code.

The *Becker* case (277 N. Y. 143, *supra*) may be distinguished, if at all, from the present case in that there the incorporation was not of a practice act, but of a whole body of substantive enactments.

This is a thorny road, and the dividing line between what is permissible incorporation by reference and what is not, is oftentimes quite obsure but the fact that it has been done in all these other acts argues for its validity here.

Referring now to the special problem presented in the estates in which plaintiff, County Treasurer, is presently acting as administrator, subdivision 14 of the new act provides as follows: " Upon the public administrator qualifying as herein provided, the county treasurer of Nassau county, or his predecessor in office, shall immediately deliver over to said public administrator all papers, moneys and effects in his hand as county treasurer belonging or appertaining to estates with respect to which such officer was appointed administrator in his capacity as county treasurer. Such delivery may be enforced in the manner provided by law in relation to public officers. Such public administrator shall succeed at once to all the rights, duties and powers of the county treasurer in all such cases without the re-issuance of letters of administration to him." This court may take judicial notice of the fact that there are some 145 estates in which plaintiff, County Treasurer, is presently acting as administrator either as successor to his predecessor in office or by virtue of his own appointment.

Although there is a strong presumption in favor of constitutionality, there would seem to be no gainsaying the fact that in making no provision for payment of fees already earned, that the new act deprives plaintiff of fees, percentages or allowances and the Surrogate has correctly held I think in *Matter of Williams* (32 Misc 2d 1072), that these appointments, once

they are made, are an attribute of the office and not of the incumbent personally.

I think this is also true, though with less force, of the fees as a whole in pending incompleted estates where plaintiff has already been appointed, since short of some misconduct on his part, or this very act, plaintiff could not have these fees taken away from him.

Therefore, I am of the opinion that this subdivision is unconstitutional in its entirety, but I am further of the opinion that it may be excised from the rest of the law without doing violence to its purpose and even though the act does not contain a separability clause. The rule is expressed by Judge CARDOZO in *People ex rel. Alpha Portland Cement Co.* v. *Knapp* (230 N. Y. 48, 60) as follows: " Severance does not depend upon the separation of the good from the bad by paragraphs or sentences in the text of the enactment (*Loeb* v. *Columbia Township Trustees* [179 U. S. 472]). The principle of division is not a principle of form. It is a principle of function. The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots."

There is no reason to suppose that the Legislature would not have enacted the rest of this law, had they been informed that this relatively unimportant provision could not stand.

It follows from this discussion that the motion for judgment on the pleadings made by each of the defendants must be granted to the extent indicated, and as to subdivision 14 judgment is granted in favor of the plaintiffs.

The plaintiffs' motion for a temporary injunction is granted as to estates in which plaintiff County Treasurer has been appointed administrator and is presently acting as such, and otherwise denied.